## SCALES *v.* GRIFFIN.

The lien (under R. L. 1833, p. 406,) of a mechanic or material man, for labor done or materials furnished in the construction of a building, attaches only upon the interest of the person for whom it was erected; and does not encumber any pre-existing right or title of any other person.

If, therefore, when the lien attaches, the person causing the building to be erected, has no title to the premises on which it stands, but a mere right, resting in contract, to a conveyance on the performance of a condition precedent, and that right is afterwards lost by his failure to perform the condition, subsequent proceedings to enforce the lien, will convey no right or title to the purchaser.

CASE reserved from Berrien Circuit Court. Ejectment by Scales against Griffin to recover possession of a cer-

tain story and a half wooden dwelling house, 18 by 25 feet, in the village of Niles, together with the lot of ground 63 feet front, by 132 feet in depth, whereon said dwelling house stands.   Plea, general issue.

To establish his title, the plaintiff proved on the trial the filing, (under R. L. 1833, p. 406,) by Milton Hall, of a claim of lien upon the dwelling-house described in the declaration to the amount of $155, for labor expended and materials furnished in erecting the same;—*scire facias* issued thereon, June 20, 1837, and served upon William P. Derby;—judgment rendered on default of said Derby, April term, 1838;—an execution issued upon said judgment requiring the sheriff to sell the house;—the sheriff's certificate of the sale of the house, by virtue of the execution, to said Milton Hall, May 16, 1839;—a deed of the house, executed by the sheriff to said Milton Hall, May 21, 1841, in consummation of such sale;—and, a conveyance of the house, with the appurtenances, to the plaintiff, by deed executed by Milton Hall and wife, Oct. 6, 1841.

The plaintiff proved also that the lot was of the size and dimensions mentioned in the declaration;—that it was the usual size of village lots in Niles, and not larger than was necessary for the enjoyment of the dwelling-house; and that it was, and always had been, enclosed and occupied with the same.

The plaintiff further proved that the dwelling-house was erected in 1837, by Milton Hall, a master builder, carpenter and joiner;—that he was employed by William P. Derby, who was at that time in the peaceable possession of the lot;—that Orrin Derby lived at the time within a few rods of the premises, and knew that Hall was erecting the building for William P. Derby:—that he stated to Hall and others, that he had sold the premises to said William P. Derby, though there was no evidence

that Hall was informed of the terms and conditions of such sale.

On the part of the defence a contract was read in evidence between Orrin and William P. Derby, for the sale by the former, and purchase by the latter, of the premises in question, bearing date May 16, 1836, and before the building was commenced. [The terms of the contract are not given in the case certified to this court.] And it was admitted by the plaintiff that when the building was commenced, the legal title in fee simple of the premises, was in Orrin Derby. It was also admitted that in October, 1838, Orrin Derby conveyed the premises by deed to the defendant, who had occupied the same ever since.

Upon this evidence the cause was submitted to the jury; a verdict was taken for the plaintiff; and the question of whether upon the evidence the plaintiff was entitled to such verdict, was raised by a motion for a new trial, and reserved by the presiding judge for the opinion of this court.

*V. L. Bradford,* for the plaintiff.

*N. Bacon* and *C. Dana,* for defendant.

FELCH, J. delivered the opinion of the Court.

The case made shows a legal title in the premises in Orrin Derby, and no legal conveyance, by him, of that title, by deed to the plaintiff, or any person through whom he claims. On the contrary, the defendant derived title directly from him by deed in fee, and possession under that deed. The plaintiff's title is derived through the proceedings and sale had by virtue of the mechanics' lien of Milton Hall, who was the purchaser at the sheriff's sale, and conveyed his title, thus acquired, to the plaintiff.

The first question presented, is, whether any title passed to Milton Hall by virtue of the lien and the proceedings to

enforce it.   The regularity of the proceedings under the lien law is not controverted; but it is contended, that, under the statement of facts here presented, no title to the premises passed.   The labor of erecting the house was done by Hall, on a contract with William P. Derby, who was in possession of the premises, under contract for a title with the owner.   The conditions of that contract are not reported in the case; and there is no evidence that those conditions were ever performed by William P. Derby; nor is this material, since it is clear that no conveyance of the title of the premises was ever made to him in pursuance of that contract.   When the mechanic's labor was performed for William P. Derby, he had no legal title to the premises, and though he had a contract with the view of obtaining it, with the owner, yet it never ripened into a title.   On the contrary, the legal title passed by deed from the owner to the defendant, who held by virtue of it. To what, under these circumstances, did the lien attach? Was it to the interest of William P. Derby only?   If so, it was liable to be defeated with his title, and must fall, unless his contract with the owner was succeeded by the conveyance of the title.   Or, was the lien of such a character as to take the title itself, regardless of the question whether the contract was ever performed, or the conveyance made, to the contractor?   Did it cut up and destroy the title of the owner, transferring a fee, clear of all prior interest in him?

The answer to these inquiries involves a construction of the statute, (R. L. 1833, p. 406,) under which these proceedings were had.

The first section of this act provides, "that all and every dwelling-house, or other building, hereafter constructed and erected within the territory of Michigan, shall be subject to the payment of the debts contracted for or by reason of any work done or materials found and provided by

any brick maker, &c. *before any other lien which originated subsequent to the commencement of such house or other building.*" The same section provides, that, when the building is erected under a contract entered into with the owner, no sub-contractor or furnisher of materials shall have a lien, unless he shall give notice thereof to the owner or owners within thirty days after being so employed.

It is evident from his language, that the lien thus given was not intended to be paramount to all other claims to the premises. If, for instance, an execution had been levied prior to the commencement of such building, the mechanic's lien would be subject to such levy, and might be entirely defeated by a sale under it. So also, of a prior mortgage; upon a foreclosure and sale, the title would pass to the purchaser, who, after the expiration of the time of redemption, would hold the premises free of any incumbrance on account of such mechanic's lien. This limitation in the statute, shows clearly, that it was never intended to allow the mechanic, or the material man, to close his eyes upon all incumbrances and titles, and hold a lien upon the fee, and deprive all others interested, by an enforcement of his claim, of their legal rights in the property. Like a purchaser, he must see to it, that he does not interfere with the rights of innocent bona fide incumbrancers.

The rights of Orrin Derby were more perfect than those of a mere incumbrancer. Not having parted with the fee, he was the legal owner of the title, and so the record showed to the world. In giving a reasonable construction to the statute, we cannot suppose that it was designed to afford greater protection against the lien created by it, to a mere incumbrancer, than to him who held the legal title. Suppose a trespasser obtrudes himself into, and occupies, the village lot of a non-resident, and procures a mechanic to erect a house upon it:— it would be monstrous

Scales *v.* Griffin.

to assert, that by proceedings to enforce the mechanic's lien, and a sale under those proceedings, the true owner could be deprived of his title. Little less monstrous would be the doctrine, that the owner, who has contracted to convey a lot upon certain terms, and given the possession until those terms be fulfilled, without parting with his title, but who, on account of a breach of the contract, was obliged to take possession of his land again, should be subject to be deprived of his title by virtue of such a lien for buildings erected for the contractor, and without the privity or consent of the owner. The statute, in my opinion, neither requires nor authorizes such a construction. It was intended to give to the mechanic or the material man, for a limited time, a right to obtain his pay for his just wages and claims, out of the very building erected by him, to the exclusion of those whose claims attached to the property at a date subsequent to his demand. It is a statute designed to be highly beneficial to those whose rights are protected by it, and should be so construed as to protect the laborer to the utmost extent of its provisions; but it was never intended to give to him a right paramount to that of the true owner of the land whereon the building was erected, or to a previous lien.

The second section of the act, which provides the method of enforcing the lien, appears to me to be in accordance with this view of its provisions. Two methods are provided for enforcing a lien filed under the statute. The first is by personal action against the debtor; the second is by *scire facias* against the debtor or owner of the building. Both these methods seem to contemplate the enforcing of a claim depending on the contract between the mechanic or material man, and his employer. The claims may be enforced by suit, as in other cases, against the debtor; and in that event, a levy and sale of the property would clearly convey only the debtor's interest in the

premises. The proceeding by *scire facias* is also against the debtor, or the owner of the building, and results in a judgment against the defendant for the amount of the lien, which judgment can only be enforced by sale of the building. The purchaser's title would date back to the time the lien commenced, and would take precedence of all subsequent claims to the premises. Still it is simply a proceeding to enforce a claim against the debtor; and that too, out of the property of the debtor; although, by virtue of the statute, a lien is given upon the specific property, from the time of the date of the claim, by pursuing the steps given by the statute to secure it. It has been supposed that the word *owner*, in that part of the section which authorizes the *scire facias* to be issued against the debtor or owner of the building, implies, that whoever may be the owner at the time the lien attaches,—whether the person who contracts for the building, or any other person,— the lien attaches to the property absolutely, and a sale under it carries with it a perfect title as against the world. But it will be observed, that the declared object of the statute is to secure the mechanic's demand to the exclusion of all subsequent claims to the property. A person employing a mechanic to erect a building on land to which he has only a title subject to prior rights of a third person, and liable to be defeated by his claim, may sell his interest, and yield his possession of the premises to another, subject, of course, to the mechanic's lien, and in that event, the purchaser, as owner, should be made a party to the *scire facias*. So, the absolute owner of the fee may convey the land, subject to the lien of his mechanic; and in that case, the subsequent owner should be made a party to a proceeding which seeks to enforce a lien upon his property. The word *owner*, then, in this section, does not enlarge the estate subject to the lien, but, in perfect consonance with the provisions of the first section, provides for

notice to an owner who takes the property after the lien has attached. In such case, notice should be given to him, either by service of the *scire facias* upon him, or by fixing a copy of the writ upon the door of the building against which the claim is sought to be enforced.

From a view of the whole statute, I am satisfied that the mechanic's lien attaches only to the property as it existed in the person causing the building to be erected, and that a sale under such lien, would carry with it only such title as he possessed at the time the lien attached.

It is said, in the case before us, that Orrin Derby, living near, and knowing of the erection of the building by Hall, while in the employment of William P. Derby, must be considered as assenting, both to the erection of the building, and the mechanic's lien thereon, and should therefore be chargeable with the lien. But all this was perfectly consistent with the relation existing between him and William P. Derby. The latter having contracted for the purchase, and having the possession under his contract, must be supposed to have made the improvements with the expectation of obtaining a title when the terms of his contract were performed. And Orrin Derby's knowledge of the erection of the building, without dissent, instead of being construed into an assent to become himself chargeable for the labor and materials, in fact only shows that he might have looked upon the expenditures as a guaranty that the contract would be performed by Wm. P. Derby. The building was erected by the latter, subject, of course, to the paramount title of Orrin Derby; who could no more be chargeable with such improvements, after a breach of the contract, than a purchaser under a mortgage sale, for improvements made on the premises subsequently to the execution of the mortgage. His silence, when no assent was required, and when the expenditures were made by one in possession, with the right

to improve, and the expectation that the improvements would inure to his own benefit, by his subsequently procuring a title under the contract, can never be considered as an implied promise, by the owner, to pay for the expenditures, or as charging his estate with a lien for them. If such were to be the effect, all such contracts, highly beneficial as they often are to the contracting parties, must cease. No landed proprietor would thus contract to convey his land upon the payment of the price at a future day, if the bargainee should have, under his contract, the power to encumber the premises by erecting buildings thereon, in such a manner as to charge him, upon a failure in the performance of the contract, with the payment. This would be to allow the opposite party to break his contract of purchase, and thereupon to compel the owner to pay for improvements without limit, or lose his property on the lien, without consent, and without compensation.

I have thus fully remarked upon the construction and application of the statute in question, because a totally different view has been urged with zeal and ability, by the plaintiff's counsel, and authorities cited to sustain his position.

Three cases are cited from the Pennsylvania Reports, which, it is contended, give such a construction to a statute similar to our own, as to sustain the plaintiff's claim. The lien law of Pennsylvania, of 1806, is similar to ours in the terms by which the lien is created, except that the entire provision as to the lien of a sub-contractor, contained in our statute, is not found in theirs. This difference affects materially the extent of such liens.

The case of *Steinmetz's Executors* v. *Boudinot*, 3 Serg. & Rawle 541, was under the lien law of 1803, and was a case where the lien claimed was for materials furnished by a sub-contractor; and it was held, that under the terms of that law, no lien was created in favor of any one but

the person who contracted with the owner. The court, however, in that case, remark that the law of 1806 was intended to give the lien for all work done, or materials furnished, whether furnished to the owner of the building or not.   In *Lewis* v. *Morgan*, 11 Serg. & Rawle, 234, the lien was filed under the law of 1806, and *scire facias* was brought by a sub-contractor, to enforce it against the building.   The court held that the sub-contractor had no personal claim against the owner for his debt; but that the claim of the laborer, or material man, did attach specifically to the building, in the hands of the owner, and that the lien might be enforced.   And, in *Savoy* v. *Jones*, 2 Rawle's R. 343, it is said that the lien arises from the credit having been given, not to the owner, but to the building.

The principle here recognized by the court of Pennsylvania, is, simply, that when a building is contracted to be built by an architect, for the owner or possessor of a lot, sub-contractors, and the laborer, and the furnisher of materials, have a lien upon the building;—that such lien does not depend upon a contract between the latter and the owner, but is extended by the statute to all material men and laborers, although employed by the contractor. In the first two cases above cited, the only question was whether such lien was good as against the person erecting the building by contract with the architect.   Such person is here called the owner; and it was decided to be a good lien on the building as against him, but no question was raised, nor was it there decided, whether such lien would carry with it the title of a third person, of a date prior to the erection of such building.

The case cited from 2 Rawle, goes farther.   The lot, in that case, was deeded to Savoy by Salter and wife, in trust, first, to the use of the wife during her life; secondly, to the use of Salter, if he survived her, during his life; and, third, to the use of his children.   While the estate was

held in trust for the wife, she caused a building to be erected, the brick for which were furnished by Jones, who filed his lien under the statute, and then commenced proceedings to enforce it against Savoy and Salter, and his wife. The wife died before the trial; and it was contended by Salter, that her estate terminated at her death, and with it must terminate the lien. The court, however, held otherwise ; and declared that, " the object of the legislature was to enable the mechanic to follow his labor or materials into the building, which is pledged for the price, without regard to the estate of the owner." " Did the lien proceed from the contract with the owner," the court proceed to say, " the argument drawn from the apparent injustice of permitting a tenant for life to effect the estate of the remainder man, who was not a party, would not be destitute of plausibility." And, it is again said, that the credit is given to the building, and not to the owner ; and, " in a majority of cases, the labor or material is furnished to the master builders, who have no interest in the ground ; so that the construction contended for would frustrate the object of the legislature nearly altogether."

These decisions are founded on the construction given to the statute, that the lien for materials furnished or labor performed — whether under contract with the owner, or with an architect who had contracted to erect the building — under all circumstances, attached to, and followed, the labor and materials in the building.

Under our statute of 1833, this broad construction, it appears to me, cannot be sustained. The first part of the first section gives the lien to all laborers and material men, in terms as unqualified as those in the Pennsylvania statute; and would, under the decision above recited, carry with it the title to the property, upon a sale, on the enforcement of the lien. The subsequent portion of the section

Scales *v.* Griffin.

provides that, when the building has been erected under contract entered into by the owner with any person, no person furnishing materials or doing work on the building for the contractor, shall have any such lien, unless such laborer or material man shall give notice to the owner that he shall claim such lien, within thirty days after being so employed; and then his lien is confined to the amount which the owner was indebted to the contractor at the time such notice was given. This provision limits the *extent* of the lien. It does not, as under the Pennsylvania statute and the construction there given to it, follow all materials furnished, and all labor performed on the building, without regard to ownership or contract. This statute gives the lien to one furnishing the materials or doing the labor for the owner, to the amount of that owner's personal liability, and no more. Even when the sub-contractor, by taking the measures pointed out by the statute, acquires a lien, that can only be to the amount due from the owner to the contractor. And again : the laborer and material man have no such general lien as under the Pennsylvania statute, in case of sub-contractors, but a mere contingent right, depending upon giving notice to the owner; and being, not a general lien, attaching to and following his labor or materials to the amount of their value or price, but dependent upon, and limited by the amount due from the owner to the contractor. The lien under our statute does not depend simply on the furnishing materials or doing labor on a building, but also upon the contract with the owner. There are but two classes of cases in which it can exist: the first, is in favor of the person who erects the building or furnishes materials or performs labor, on a contract, express or implied, with the owner; the second, where there is a contract to build, and materials furnished or labor performed for the contractor, and proper notice given;

and this last instance is, in fact, a claim under the contractor's contract, and limited to the amount due him.   In the case last cited, it is admitted by the court that if the lien proceeded from the contract with the owner, there would be much plausibility in the argument that a tenant for life could not, by erecting a building on the premises, create a lien which should affect the estate of the remainder man.    But here there can be no such lien without a contract with the owner.    The credit is the foundation of the lien by which the amount due is secured, and the lien does not exist unless there be such credit given.   Our statute is, in its legal effect, then, more like the Pennsylvania statute of 1803, than that of 1806; and the general language, as to the nature and extent of the lien, used by the court in the two cases last cited, does not apply. Even under their statute, it is difficult to reconcile the decision in the case in 2 Rawle, with the principles of justice; but under ours, it is clear that the right depends upon the liability of the owner, on his contract for the labor or materials.

In these comments on the two statutes, I have used the word owner to designate the person erecting the building, or causing it to be erected, on premises under his control, without regard to the question whether the legal title was in him or not.   So it is used in the Pennsylvania cases, and so in our statute. . But, as we have shown, the lien depends upon, and is commensurate with, the liability of such owner.    An enforcement of the lien would clearly carry with it only the title in the property owned by him ; and it is only upon the principle that the lien did not proceed from such contract, under the Pennsylvania statute, that the court, in the case of *Savoy* v. *Jones*, above cited, held that the lien attached absolutely to the building — that the credit was given to the building, and not to the owner; and therefore, that the remainder man must take the pro-

perty subject to the incumbrance of such lien. This reasoning evidently does not apply to our statute, and the views of its provisions which I have above expressed, seem to me not only warranted by a fair construction of its terms, but perfectly in consonance with the rights of all parties concerned. The result will be that,—

1. The lien depends on the contract, either express or implied, by which the person erecting a building, or causing it to be erected by contract, is bound to pay for the labor or materials for the same, and can never exceed the amount so due from him.

2. This lien, like any other lien by which a debt is secured, attaches to the right and title of the debtor in the property, at the time it accrued.

3. If that person has no title to the land on which the building is erected, or has only a title subject to be defeated by the enforcement of the legal claim of another, outstanding at the time the mechanic's lien attached, a sale under the lien would carry only the interest of such person, subject to the outstanding claim; and,

4. The true owner of the title, who had made no contract with the mechanic or material man, would, when the right to possession became perfect in him, by reversion, or otherwise, under a previous claim on the fee, be entitled to his premises, free from the incumbrance of such lien.

From this view of the law, it follows, that, in the case before us, the mechanic's lien attached only to the interest and estate of William P. Derby in the premises; and his contract to purchase having never ripened into a title, and the possession having been re-obtained by the owner of the land, the lien was at an end; and the defendant, who is grantee of the true owner, could not be ousted by the purchaser under the lien. The verdict

below was therefore erroneous, and should be set aside; and it must be so certified to the court below.

It was contended by the defendant in this case, that the lien, if it attached at all under the statute of 1833, attached to the building only, and not to the land upon which it was erected. Admitting that it embraced both, as claimed by the plaintiff, the view of the case which we have taken, precludes his right to recover upon the facts stated, and we therefore express no opinion upon this question.*

> *Verdict set aside, and new trial granted.*

* *Vide* R. S. 1838, p. 537, § 1, p. 541, § 26, and R. S. 1846, p. 554, § 1, p. 556, § 25, under which, it is apprehended, that neither of the questions involved in this case could arise.