# E. A. Wheeler *v.* Pierce, Kelley & Co., Appellants.

[Marked to be reported.]

*Mechanic's lien—Character of structure—Act of June 16, 1836.*

If a structure is of such a substantial and permanent character that it may in any reasonable sense be known as a building, it may be incumbered by a mechanic's lien under the act of June 16, 1836, P. L. 696.

Defendants owned a blast furnace plant, consisting of stock house, casting house, hot blast, engine house, two systems of boilers, one on each side of the engine house, near but not contiguous to it, offices, shops and other structures, all of which were located as compactly together as practicable for the manufacture of pig iron, but not inclosed by the same walls, nor covered by the same roof. Some years after this plant was constructed defendant erected a battery of boilers in close proximity to the old boilers. The structure consisted of a stone foundation, commenced below the surface of the ground, with brick walls above the ground, in which

were doors and other openings to the fire and heating chambers. The boilers were above the furnace. The brick wall extended to the top of the boilers, and supported a brick arch which, with the top of upper tier of boilers, formed the only covering the structure had. The space within the structure was fully occupied by the furnace and boilers. The water and steam connections were made with the same pipes with which the water and steam pipes of the old boilers were connected, but these connections were independent of the old plant, and could be used without them. *Held*, (1) that the structure was a building within the meaning of the act of June 16, 1836, and could be subjected to a mechanic's lien; (2) that a mechanic's lien could also be sustained against it for machinery or fixtures furnished to ironworks under the act of April 21, 1856, P. L. 496; (3) that the structure was not an addition, alteration or repair within the meaning of the act of May 18, 1887, P. L. 118, which required notice to be given of an intention to file a lien.

The act of May 18, 1887, must be held to apply to such work or materials as are done or furnished for repairs, alterations or additions, which were not covered by the acts of June 16, 1836, and April 21, 1856. Thomas v. Hinkle, 126 Pa. 478, distinguished.

Argued Oct. 9, 1894. Appeal, No. 54, Oct. T., 1894, by defendants, from order of C. P. Mercer Co., Sept. T., 1892, No. 3, M. L. D., refusing to strike off mechanic's lien, and making absolute a rule for judgment for want of a sufficient affidavit of defense. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mechanic's lien.

The facts appear by the opinions of the lower court and the Supreme Court.

The opinion of the lower court by MEHARD, P. J., on a reargument of a motion to strike off the lien, and on a motion for judgment for want of sufficient affidavit of defense, was as follows:

" The principles applicable to both the pending motions are so far identical that they may be considered together.

" The learned counsel for defendants contend that the opinion filed by the court, refusing their motion to strike off the lien, shows a misapprehension of the character of the erection against which the lien is filed.

" A comparison of defendants' affidavit of defense with the lien as amended shows that the parties do not differ as to the material facts in detail, but they draw opposite conclusions

VOL. CLXVII—27

from those facts; the defendants alleging that the description shows the erection in question to be the repair, alteration or addition to a house or other building, within the meaning of the act May 18, 1887, P. L. 118. What character is. to be attributed to the structure, viewed with reference to our mechanic's lien laws, is a mixed question of law and fact. The facts being undisputed, it becomes a question of law: Patterson v. Frazier, 123 Pa. 414.

" The undisputed facts are as follows: The defendants own a piece of land, containing about eleven acres, situate in the borough of Sharpsville, Mercer county, Penna. About ten years ago defendants constructed on said land a blast furnace plant, consisting of stock house, casting house, hot blasts, engine house, two systems of boilers, one on each side of the engine house, near but not contiguous to it, offices, shops and other structures, all of which are located as compactly together as practicable for the manufacture of pig iron, but are not inclosed by the same walls, nor covered by the same roof.

" After said plant had been completed and operated for a number of years, to wit: between November 5th, A. D. 1891, and January 27th, A. D..1892, the plaintiff, at the instance of defendants, erected and constructed on defendants' said land one of ' Wheeler's Patent Improved Boiler Furnaces,' and one battery of ' Wheeler's Water Tube Boilers.' This structure consists of a stone foundation, commenced below the surface of the ground, on which the furnace is erected, having brick walls, with doors and other openings to the fire, heating chambers and other compartments within; the patent boilers being immediately above said furnace, and said brick walls extending to the top of the boilers and supporting a brick arch which, with the top of the upper tier of boilers, forms the only covering the structure has. There is thus formed a rectangular structure thirteen and two tenths feet by sixteen and nine tenths feet, which is twenty feet high from the top of the stone foundation to the top of the brickwork. But above the brickwork and boilers, are the steam drums, and above all are iron stacks about twenty feet in height, making a total height from the top of the foundation to the top of the stacks of about forty feet. The space within the wall is fully occupied by the furnace and boilers.

" This structure is located in close proximity to one of the old batteries of boilers, the stone foundation of the new structure abutting against the foundation supporting the old boilers. The distance between the walls surrounding the new and the main walls surrounding the old boilers is three and two tenths feet, but there is a projection from the old wall which is within six inches of the new.

" The new and the old boilers are both connected to the same pipes for water supply and for carrying steam to the engines of said furnace; and the old as well as the new do furnish steam for said engines ; but the two systems are independent of each other, and the new are designed ultimately to take the place of the old boilers.

" The new structure was erected as a part of defendants' furnace plant, and was designed to be used in connection with the other buildings, apparatus and machinery constituting said plant, in the manufacture of pig iron.

" It thus appears that the structure in question is new throughout; that it is permanent and substantial ; that it is not incorporated with, or attached to, any other foundation or structure ; but stands on its own foundation and has its own separate walls and covering, and that it, and the machinery and fixtures embodied in it, are a part of defendants' ironworks.

" The nature and peculiar form of this furnace and boiler house do not give ground for objection to plaintiff's lien. Such structures are buildings within the meaning of the act June 16, A. D. 1836 ; Short v. Miller, 120 Pa. 470, 475, 476 ; Short v. Ames, 121 Pa. 530, 536 ; Titusville Iron Works v. Keystone Oil Co., 130 Pa. 211, 221 ; Linden Steel Co. v. Imperial Refining Co., 138 Pa. 10.

" In considering the decisions of our Supreme Court, in order to determine the validity of a lien against the structure, located as it is with reference to other buildings, and embraced as it is in defendants' works, it must be borne in mind, that the act of 1836, to which those decisions relate, secures a lien where the work done, or material furnished, was in the erection or construction of new buildings only : In re Howett, Landis's Appeal, 10 Pa. 379; Miller v. Hershey, 59 Pa. 64; Long v: McLanahan, 103 Pa. 537, 544; Patterson v. Frazier, 123 Pa. 414.

" There is a class of cases which speak of substantial additions of material parts, and which sustain the proposition that it is not requisite that the building should be new throughout; but that if there has been a rebuilding, incorporating the old structure, or a part of it, with substantial additions of material parts, and there have been such alterations in the external form as would constitute a new building in common parlance, then the act of 1836 secures a lien, for work done or material furnished, against the whole structure: Driesbach v. Keller, 2 Pa. 77 ; Armstrong v. Ware, 20 Pa. 519; Nelson v. Campbell, 28 Pa. 156; Hershey v. Shenk, 58 Pa. 382; Miller v. Hershey, 59 Pa. 64. But the ratio decidendi of this line of cases is not, that the substantial additions of material parts gave the lien ; but that the lien was valid because the building was, in fact and in law, new. Thus in Driesbach v. Keller the question at issue is stated in the following words : ' The lien given by law to the mechanic is for work done in the erection of a building, and the question is whether it is to be legally considered as the erection of a building, or as merely the repair of an old one, to which no lien is given:' 2 Pa. 79. In Armstrong v. Ware the point is stated thus : ' The law gives a lien to mechanics on every building erected, but not for adding to or altering an old building :' 20 Pa. 520. In Hershey v. Shenk, after quoting the instruction of the lower court assigned as error, Mr. Justice SHARSWOOD construed the proposition to be ' if the jury believed these facts to have been substantiated by the evidence, it was in point of law a new erection :' 58 Pa. 384.

" There is another line of cases wherein liens were held valid under the act of 1836, when filed against new buildings erected near to but separate from old buildings, where the new and the old are parts of one plant, and all are designed to be used for a common purpose. Such are Parrish and Hazard's Appeal, 83 Pa. 111, and Girard Point Storage Company v. Southwark Foundry Co., 105 Pa. 248.

" In both of those cases the liens in question were filed against the new structures only. Had they been filed against all the buildings standing on the same lot and connected by a common purpose, the liens would have been invalid : Wigton and Brook's App., 28 Pa. 161, 163 ; Miller v. Hershey, 59 Pa. 65, 69 ; Long

v. McLanahan, 103 Pa. 537. It is true one part of the opinion in Parrish and Hazard's Appeal concludes that the buildings in question were 'additions of material parts.' But we do not understand what was there said, to mean that those buildings were to be regarded as an addition to any other building, for the fact was clear that no other building was increased, extended, enlarged, augmented, or in any manner changed in outward appearance by them. The expression occurs in pointing out the difference between the buildings in question and ordinary out houses appurtenant to a dwelling house, and the import of the argument in which the expression referred to occurs is, that, if it were true that some out buildings appurtenant to dwellings were too insignificant to support a mechanic's lien, yet the buildings in question were not of that character, but were material parts, added, not to another building, but to the ironworks as a whole. In other words, that they were sufficiently permanent, substantial and material to support the liens filed against them. See opinion, 83 Pa. 123, 124. But if there is any ambiguity in that part of the opinion in Parrish and Hazard's Appeal, there can be no doubt that it was held in Girard Storage Co. v. Southwark Co. that a lien filed against buildings which with other buildings formed one plant, and all essential for a common purpose was valid. See 105 Pa. 252.

" There is still another class of cases wherein liens have been sustained under the act of 1836 for work done and material furnished in the erection of a kitchen, wing or other appendage to an old building. To this class belong Lightfoot v. Krug et al., 35 Pa. 348 ; Pretz and Gausler's App., 35 Pa. 349 ; Harman v. Cummings and Wife, 43 Pa. 322.

" There is a marked difference between the relation such an appendage bears to the old building, and that between separate buildings of the same plant. In the former, the parts not only show a common end, but they coalesce into the same building; while in the latter the end is common but the buildings are distinct. There is as plain a difference between adding a wing to an old building and reconstructing it, as contemplated in the first class of cases cited above. In the former instance, the wing is subordinate to the main building, which stands unchanged in outward form ; while in the latter, the old part is subordinate to a new design, and is used only as convenient material in the erection of another building.

" It is true the opinions delivered in these three classes of cases held them all to be governed by the same principle. But that principle, as we think has been shown, was not, that the liens were valid because filed against additions of material parts ; but that they were valid because the structures in question were, in fact and in law, new buildings.

" It is also true that subsequent decisions hold, that the facts in such cases as belong to the third class do not show a new building, within the meaning of the act of June 16, 1836, but are additions, within the meaning of the act of May 18, 1887, P. L. 118. See Best v. Baumgardner et al., 122 Pa. 17 ; Thomas v. Hinkle et al., 126 Pa. 478 ; Groezinger v. Ostheim, 135 Pa. 604. Those decisions, however, do not affect cases belonging to the first or second classes, which differ so clearly and materially in their facts from the third.

" The facts presented by the case at bar require it to be judged by the criterion of the second class.

" In such cases, the question cannot be whether the new structure is an addition, alteration or repair of another, because it does not increase, change or improve either the outside or the inside of any other structure. It is not incorporated with or united to any other. The question in such cases, as we understand, is, whether the new structure, standing distinct from any other, is sufficiently permanent and substantial, and is of a nature to be called a building within the meaning of the act of 1836.

" The structure against which plaintiff's lien is filed is both permanent and substantial. That it is of a nature to be called a building has been determined in Short v. Miller, 120 Pa. 470, and other similar cases, supra. It follows, therefore, that the lien is valid under act of 1836.

" This conclusion makes it unnecessary to discuss the effect of the act of April 21, 1856, P. L. 496, or the constitutionality of the act of May 18, 1887.

" And now the defendants' motion to strike off the plaintiff's lien is refused, and it is considered and adjudged that judgment be entered in favor of plaintiff and against defendants for want of a sufficient affidavit of defense for the amount of plaintiff's claim and costs. The sum to be liquidated by the prothonotary."

*Errors assigned* were (1) refusal to strike off lien; (2) entry of judgment as above.

*E. S. Templeton, Thomas Tanner* with him, for appellant.—Anything erected by art, and fixed upon or in the soil, composed of different pieces connected together and designed for permanent use in the position in which it is so fixed, is a building: Century Dictionary ("Building"); Bouvier's Law Dictionary ("Building"); Lauman's App., 8 Pa. 473; Norris's App., 30 Pa. 122; Short v. Miller, 120 Pa. 470; Short v. Ames, 121 Pa. 530; Linden Steel Co. v. Imperial Refining Co., 138 Pa. 10; also 146 Pa. 4; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627; Sicardi v. Titusville Iron Works, 149 Pa. 139; Linden Steel Co. v. Rough Run Mfg. Co., 158 Pa. 238.

The act of 1836 does not apply to alterations or repairs; but erections or structures are buildings within the meaning of the act of 1836, although they are not entirely distinct from and independent of other buildings: Nelson v. Campbell, 28 Pa. 156; Parrish & Hazard's App., 83 Pa. 111.

When the acts of 1861 and 1887 apply and the law distinguishes between independent buildings and additions, and expressly gives a lien for an addition with certain added requirements, then this court, following the statutes, recognizes the distinction between a plant or an independent building on the one hand, and a building which is an addition to such plant or other building, and holds that such additions, although originally subjects for liens under the act of 1836, must now, as to mechanics' liens, be governed by the acts of 1861 and 1887: Best v. Baumgardner, 122 Pa. 17; Thomas v. Hinkle, 126 Pa. 478; Groezinger v. Ostheim, 135 Pa. 604; Smyers v. Beam, 158 Pa. 57; Linden Steel Co. v. Imperial Refining Co., 138 Pa. 10.

A battery of boilers might of course be erected as an independent structure, but the boilers in question are necessary for the operation of this iron plat.

The act of April 21, 1856, P. L. 496, is a supplement to the act of 1836, and they and the acts of 1861 and 1887, also supplements of said act of 1836, will all be construed together; Parrish & Hazard's App., 83 Pa. 111.

The act of 1836 does not prescribe the subjects on or against

which, but only the objects for which, the lien can be filed: Summerville v. Wann, 37 Pa. 182.

The right to file a lien for boilers and boiler house furnished for an iron plant does not depend upon the act of 1856, for it existed under the act of 1836: Parrish & Hazard's App., 83 Pa. 111.

Our position then is that the structure in question, if a building within the meaning of the mechanic's lien laws, is an addition within the act of 1887; that under that act notice of an intention to file a lien is a prerequisite to the right, and no notice being alleged, and none having in point of fact been given, the lien is invalid, and the affidavit of defense having fully set up these facts, should have been held sufficient.

*A. W. Williams*, for appellee.—The lien filed in this case can be sustained, as for an erection or construction under the act of June 16, 1836, P. L. 496; Groezinger v. Ostheim, 135 Pa. 604; Parrish & Hazard's App., 83 Pa. 111; Thomas v. Hinkle, 126 Pa. 478.

It can well be sustained as for machinery or fixtures furnished and used in and about ironworks, under the act of April 21, 1856, P. L. 496; Summerville v. Wann, 37 Pa. 182.

Nowhere is the idea of a separate erection contemplated by the acts, giving a lien for repairs, alterations and additions.

By no reasonable construction of the acts of assembly or interpretation of the decisions of this court can the building for which the lien in this case is filed be held to be a repair, alteration or addition to any house or other building, within the meaning of the act of May 18, 1887.

OPINION BY MR. JUSTICE GREEN, April 15, 1895:

We agree with the opinion of the learned court below which contains a full exposition and classification of the decisions applicable to this class of cases, and only add some matters in response to the contention of the appellants. The battery of boilers in question is completely within a structure which is an independent erection, standing on its own stone foundations, and built of brick, in size thirteen and two tenths feet by sixteen and nine tenths feet, and twenty feet high. While the exterior structure is an essential part of the boiler plant itself,

forming the sides of the fire chambers, inclosing and sustaining the boilers in position, and sustaining also the steam drums at the top, over the boilers, yet it is a substantial and costly structure performing the function of a building as to the boilers, as well as constituting a part of the boiler plant. While its water and steam connections are made with the same pipes with which the water and steam pipes of the old boilers are connected, these connections are independent of the old plant and can be used without them.

It is true there is no building erected around and over the boiler plant to protect it from the weather. But upon that subject, in Short v. Miller, 120 Pa. 470, we said, PAXSON, J., " The act of assembly does not designate the character of the buildings to which a mechanic's lien may attach. . . . Nor are we embarrassed with the question whether buildings of any description are essential to an oil refinery. An engine and boiler for any kind of a manufactory, do not absolutely require a building to protect them. Both may stand in the open air, yet no one doubts that if an engine and boiler house are erected to protect them from the weather, a lien will attach for labor and materials used in their construction. Nor have we any doubt that the lien attached to the building in this case."

In Short v. Ames & Keese, 121 Pa. 530, which was a claim of lien upon an oil refinery, Mr. Justice CLARK, delivering the opinion, said, " The act of June 16, 1836, as we said in that case, does not designate the character or kind of a building to which a mechanic's lien will attach; if the structures are of a substantial and permanent character, and may in any reasonable sense be known as buildings, they may be incumbered by lien."

The case of Parrish and Hazard's Appeal, 83 Pa. 111, is so similar in its facts to the case at bar that we think it controls the present contention. The property was an old furnace plant which had been in use for a number of years, just as this, and its owners desiring to increase its power, contracted for a new engine, a new set of boilers, drumheads and fixtures, and for a boiler stack, all of which were constructed but by different contractors. We held that these improvements were substantial additions to the old buildings for permanent purposes, made at a heavy cost, and so connected with the origi-

nal structure as to be as available and direct as if they had been originally built, and that they were the subjects of mechanics' liens under the act of June 16, 1836, and that they could also be sustained under the act of April 21, 1856. In considering the subject of the boilers Mr. Justice WOODWARD delivering the opinion said, "The foundations of the boilers were seven walls, each sixty-seven feet long, from eighteen inches to two feet thick and from two to three and a half feet high. Brick walls were built on the stone ·foundations to the height of six feet extending nearly to the tops of the boilers and inclosing them. . . . That such machinery as was furnished here was of a kind for which in the ordinary case of an erection, a lien could be supported, is well established. A lien was sustained for a copper boiler in a brew-house in Gray v. Holdship, 17 S. & R. 413; an engine by which a sawmill was propelled in Morgan v. Arthurs, 3 Watts, 140; and for burr mill-stones in Wademan v. Thorp, 5 Watts, 115. . . . The engine house and boiler house became parts of the furnace the moment they were completed. They were connected with it by blast pipes and flues, and' the connection was as available, essential and direct, as if they had been built beside the furnace ·walls. In the language of the decisions they were 'additions of material parts' to the original structure. They served in their actual use all the purposes that actual additions would have served, and their extent and value were significant enough to give ample notice to purchasers and creditors of the change in the character of the property. The decision of the auditor and the decree of the court below in support of these liens under the provisions of the act of the 16th of June, 1836, were not only in accordance with the general principles deducible from the cases that have been collected but vindicated by the very rules which those cases have established."

The only difference between the structure in that case and in this, is the fact that a frame boiler house was erected over and around it so as to protect it from the weather, but the decision was not based upon that circumstance, nor could it be, considering the reasons assigned for the ruling.

The contention now made for the appellants, that since the passage of the act of 1887, this kind of construction must be regarded as an addition, alteration or repair, and therefore as

being subject to that act which requires notice to be given of an intention to file a lien, is not well taken. As was held in Parrish and Hazard's Appeal, the lien could be sustained under the act of 1856 which gave a lien for machinery, and that act did not require any notice. As between the acts of 1856 and 1887, we think it quite clear that the structure in this case must be regarded as provided for by the act of 1856, in contrast with the act of 1887, for the reason that the act of 1856 is directly applicable to machinery as such, whereas the act of 1887 provides that the act of 1836 and its supplements shall be held and taken thereafter to apply to work done and materials furnished, for or about the repairs, alteration or additions to any house or building. We think this must be held to apply to such work or materials as are done or furnished for repairs, alterations or additions, which were not reached by the acts of 1836 and 1856. If the remedy under those acts obtained, it was without the restraining or qualifying conditions imposed by the act of 1887, and in any given case if the structures were subject to lien under the former acts as original erections, but because of their character, could be embraced by the act of 1887, the remedy would be diminished rather than expanded by the application of that act. This act is an enlarging and enabling one, intended to embrace cases not within the purview of the previous legislation, but if it is extended to cases which were within such purview, the remedy available under the preexisting legislation would be no longer available in its entirety, and as to all such cases the act of 1887 would become a restraining instead of an enlarging act. We think such a result would be inconsistent with the manifest purpose of the act.

It is true that in the case of Thomas v. Hinkle, 126 Pa. 478, the opinion seems to warrant the contention of the appellants in this regard. But a careful consideration of that decision shows that it is not applicable here. The case arose under the provisions of the act of August 1, 1868, P. L. 1168, which was an act giving a right of lien, in the city of Philadelphia only, in all cases of repairs, alterations and additions, but annexed certain conditions and qualifications as attending the exercise of the right, one of which was a prohibition of lien in the case of a conveyance of the property before the filing of the lien. We held that the act of 1868 was the law in Philadelphia in all

cases of repairs, alterations and additions, and as this was a clear case of addition under the act, the right of lien was only enforceable in conformity with the act. The reasoning upon which the decision was based was that, "if there are two acts, of which one is special and particular, and clearly includes the matter in controversy, whilst the other is general, and would if standing alone, include it also, and if, reading the general provision side by side with the particular one, the inclusion of that matter in the former would produce a conflict between it and the special provision, it must be taken that the latter was designed as an exception to the general provision." The act of 1868 was special and local and conferred a lien within the limits of the city of Philadelphia, which had no existence in any other part of the commonwealth. Within that city it was the law in all cases of repairs, alterations and additions, but outside of the city it was not the law in any such case. Hence the doctrine invoked as a principle of construction was directly applicable. But in the present case there is no such situation. The law of 1887 is just as general as the law of 1836, or the law of 1856. It and they extend to all parts of the commonwealth. As between them there is no conflict. The act of 1836 extended to all cases of buildings but was held not to include cases which were merely cases of repairs, alterations or additions. The law of 1856 embraced all cases of certain designated kinds of machinery. The law of 1887 simply enlarged the subjects of lien generally by extending them to repairs, alterations and additions, without taking away from the laws of 1836 and 1856 the right of lien in the cases which they embraced. Either of the former laws would embrace the present structure and therefore there was a complete remedy under those acts. The right of lien in this case does not depend in any degree upon the act of 1887, it is complete without it and is therefore not subject to its conditions or qualifications. We are of opinion that the learned court below was correct in the conclusions reached.

Judgment affirmed.