38 P.(2d) 77

## ALBUQUERQUE LUMBER CO. v. MONTEVISTA CO.

### No. 3951.

Supreme Court of New Mexico.

Nov. 23, 1934.

John F. Simms, of Albuquerque, for appellant.

George S. Klock, of Albuquerque, for appellee.

SADLER, Justice.

Montevista Company, the appellant, as owner of an addition to the city of Albuquerque, contracted the sale to one Townsend of a lot and fractional lot in said addition. Townsend was a builder engaged in the construction of residence properties on lots purchased under executory contracts. According to his practice, after construction of the building, he would incumber the lot and improvements with a mortgage from the proceeds of which the claims for labor and material and balance due on the lots were satisfied.

The appellant knew of his practice and that he proposed to construct on the lots in question a building of brick for residence purposes. The contract called for $1 down and the balance in installments. The down payment represents all ever paid on the contract. Before he had purchased any materials from Albuquerque Lumber Company, the appellee, its representative visited the office of appellant and inquired if Townsend had title to the lots. The representative was informed that he did not, but was purchasing on contract. Upon being told that appellee proposed to sell him the material for the job,

appellant's representative remained silent, making no comment the one way or the other. The appellee then began furnishing materials and continued doing so until the value thereof reached $804.37, for which amount it filed its claim of lien.

The appellant knew the work was started, but did not post the property. No credit was extended appellant by appellee, all materials being charged to Townsend. When Townsend got the foundation in and started to lay brick on the wall, a creditor attached him and ruined his credit. The appellant intervened in the attachment suit and got an order adjudging that Townsend had no title to the land in question (which was also attached), and the writ was vacated as to that property, the appellant resuming possession and canceling Townsend's contract for failure to pay.

The foundation and part of a wall constructed as aforesaid are of no value to the land and contribute nothing of value thereto in the way of betterments or otherwise. Within the time allowed by law, the appellee filed its claim of lien against Townsend and the land, and foreclosed in the suit out of which this appeal arises. Certain junior lienholders against Townsend were made parties to the foreclosure suit along with Townsend, his wife, and the appellant. The junior lienholders passed out on adverse ruling, and the contest narrowed down to the appellee as material lien claimant against the appellant. The court entered a decree foreclosing appellee's claim of lien as against appellant's estate in the land and dismissed the latter's cross-complaint against appellee, asking for cancellation of its lien claim as a cloud. This appeal followed.

■ A nice question confronts us at the very threshold of this appeal. Does knowledge by appellee that Townsend, its customer, was merely an executory vendee in possession, with ownership of the legal title in appellant, deny effect to the latter's failure to post? The appellee, by invoking the provisions of Comp. St. 1929, § 82-210, furnishes a negative answer to the inquiry. The appellant affirms the contrary.

This statute appears as section 11 of chapter 16 of the Session Laws of 1880, the original Mechanics' Lien Act. It furnishes an easy means whereby the owner of property in possession of another under tenancies, purchase contracts, or otherwise may, after knowledge that such other has commenced repairs, alterations, or improvements, relieve his (the owner's) estate in the premises from liability therefor by posting in some conspicuous place on the premises or improvements a notice of nonliability. In default of such posting, the statute declares the improvements or repairs "shall be held to have been constructed at the instance of such owner," and his interest "shall be subject to any lien filed" in accordance with the provisions of said act.

This statute has been before the state and territorial Supreme Courts many times for consideration, although none of the decisions dealing with it involves the precise question here presented. Its effect, either to bind the owner's estate if with knowledge he fails to

post, or to relieve him, if without knowledge, or having knowledge, where he posts, has never been questioned in any of said decisions. Post v. Miles, 7 N. M. 317, 34 P. 586 (same case on subsequent appeals under other titles, see Mountain Electric Co. v. Miles, 9 N. M. 512, 56 P. 284, and Armijo v. Mountain Electric Co., 11 N. M. 235, 67 P. 726); Ford v. Springer Land Ass'n, 8 N. M. 37, 41 P. 541; Post v. Fleming, 10 N. M. 476, 62 P. 1087; Pearce v. Albright, 12 N. M. 202, 76 P. 286; Stearns-Roger Mfg. Co. v. Aztec Gold Min. & Mill. Co., 14 N. M. 300, 93 P. 706; Albuquerque Lumber Co. v. Tomei, 32 N. M. 5, 250 P. 21; Mitchell v. McCutcheon, 33 N. M. 78, 260 P. 1086.

But appellant reminds us that our Mechanics' Lien Act was adopted from California (Ackerson v. Albuquerque Lumber Co., 38 N. M. 191, 29 P.(2d) 714). It relies upon four California decisions in support of its contention that actual knowledge by appellee that appellant held the legal title to the property obviated the necessity of posting to relieve appellant's estate from liability for the improvements being made. The cases cited are Jurgenson v. Diller, 114 Cal. 491, 46 P. 610, 55 Am. St. Rep. 83; Ayers v. Green Gold Min. Co., 116 Cal. 333, 48 P. 221; Reese v. Bald Mountain Consol. Gold Min. Co., 133 Cal. 285, 65 P. 578 and Street v. Hazzard, 27 Cal. App. 263, 149 P. 770.

There are statements in some of these cases which tend to support appellant's position. However, as held in a later decision by the Supreme Court of California, Leoni v. Quinn, 189 Cal. 622, 209 P. 551, 552, where, in a controversy between a lien claimant and a lessor, the question now argued was squarely put, the point was not involved in those cases and they were not deemed decisive. The court said:

"It is earnestly contended that actual knowledge must be held to be the equivalent of the notice prescribed by the Code. To so hold would be to hold in effect that the giving of an informal verbal notice would be a substantial compliance with the requirements of the section. This would amount to a repeal of the express provisions thereof which require the posting of a formal notice in writing and specifying what it must contain, and further require that a verified copy thereof must be filed for record. As was said in the case above cited: 'This provision is for the benefit of the owner, and he must avail himself of it, or otherwise, according to its terms, his interest will be liable for the lien.' * * * What was said in Jurgenson v. Diller, 114 Cal. 491, 46 P. 610, 55 Am. St. Rep. 83, and Reese v. Bald Mountain, etc., Co., 133 Cal. 285, 65 P. 578, is not in point here. As was expressly pointed out in the latter case, section 1192, Code of Civil Procedure, was not applicable to either of those cases because they involved subtractive mining which was not 'the construction, alteration * * * or repair of any building or other improvement.' In Ayers v. Green Gold M. Co., 116 Cal. 333, 48 P. 221, it was expressly held that this section was not there applicable because the owner had no knowledge or notice of the doing of the work. Street v. Hazzard, 27 Cal. App. 263, 149 P. 770, is not in point for the

reason that it was there stipulated that the owner had posted the notice of nonliability in full compliance with all of the requirements of the section as it then read (before the amendment of 1911).

"The case of Pasqualetti v. Hilson, 43 Cal. App. 718, 185 P. 693, in which an application for rehearing was denied by this court, is squarely in point here, and goes even further than is necessary to sustain appellant's contentions in the instant case. It was there conceded that the owner had in due time posted written notice of nonliability which fully complied in all respects with the requirements of the section; that within the required time a true copy thereof had been filed for record; and that the plaintiff had actual knowledge thereof. It was held, notwithstanding these facts, that the owner's interest in the property was subject to the lien, for the sole reason that the copy of the notice which was filed for record was acknowledged before a notary public instead of being verified as the law requires."

As pointed out in the opinion just quoted from, the case of Pasqualetti v. Hilson, 43 Cal. App. 718, 185 P. 693, presents facts even stronger for the contention made than those disclosed in Leoni v. Quinn. Nevertheless, the court in that case held a failure to observe the requirements of the nonliability statute was fatal to the owner's claim of immunity.

Later, in Flora v. Hankins, 204 Cal. 351, 268 P. 331, the Supreme Court of that state ruled that personal oral notice by the owner of premises that she would not be responsible for any work done by contractors on building constructed under contract with lessee was insufficient under the California statute to relieve the owner's estate from liability.

In a still later case, Hammond Lumber Co. v. Goldberg, 125 Cal. App. 120, 13 P.(2d) 814, 818, a California Court of Appeals, dealing with the corresponding section of the California Mechanics' Lien Act, changed somewhat by amendments, said: "'The courts, having adopted a rule of liberal construction relative to mechanic's liens, must follow a strict construction of any act or provision by which the owner of property upon which improvements are made may relieve himself from, or escape, liability therefor. See Pasqualetti v. Hilson, 43 Cal. App. 718, 185 P. 693, where such a notice, otherwise sufficient, was held ineffectual because acknowledged instead of verified."

Counsel for appellant calls our attention to amendments of this section, and urges that the force of these earlier cases is not to be weakened by later decisions subsequent to the amendments. As pointed out in Ackerson v. Albuquerque Lumber Co., supra, we adopted the California act of 1872, as amended in 1873–74. As this section of the California act, section 1192, Cal. Code Civ. Proc., read then, so ours remains today. It has been several times amended, the changes involving a lengthening of the time for posting notice, a revision of its contents, and the requirement for recording a verified copy thereof. A history of the section in California follows: Enacted March 11, 1872;

amendment approved March 30, 1874, Code Amdts. 1873–74, p. 410; March 18, 1907, Stats. and Amdts. 1907, p. 577, Kerr's Stats. and Amdts. 1906–07, p. 481; May 1, 1911, Stats. and Amdts. 1911, p. 1317; May 16, 1925, Stats. and Amdts. 1925, p. 304.

We find nothing in the amendments, apart from the original text, controlling the basic conclusion reached in Leoni v. Quinn and Pasqualetti v. Hilson, supra, that actual knowledge by the claimant of the state of the title does not relieve the owner's estate, if he fails by posting to repel the deadly inference of consent or authorization consequent under the statute upon a default in posting. We have held in Ackerson v. Albuquerque Lumber Co., supra, that actual knowledge by the owner of the property intended does not cure in favor of the lien claimant a defective description in the notice of lien.

█ The statute does no more than to furnish a rule of evidence whereby the owner's consent or acquiescence may be determined. Title Guarantee & Trust Co. v. Wrenn, 35 Or. 62, 56 P. 271, 273, 76 Am. St. Rep. 454; Wheaton v. Berg, 50 Minn. 525, 52 N. W. 926 and Fauser v. McElroy, 157 Minn. 116, 195 N. W. 786. The cases of Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663, and Randolph v. Builders' & Painters' Supply Co., 106 Ala. 501, 17 So. 721, relied upon by appellant as pointing to unconstitutionality of the statute if held to create a conclusive presumption, dealt with a quite different statute.

"The language in Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 Am. St. Rep. 663, was directed to entirely dissimilar provisions in the lien law of 1887 (chapter 170), which were of so drastic a nature that the court was compelled to hold the entire law unconstitutional." Fauser v. McElroy, 157 Minn. 116, 195 N. W. 786, 788.

For, as the Supreme Court of Oregon said in Title Guarantee & Trust Co. v. Wrenn, supra: "It is claimed that, inasmuch as a lien can only be created upon the land of another by his consent or authority, this section is unconstitutional and void, and the cases of Randolph v. Supply Co., 106 Ala. 501, 17 So. 721, and Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513 [1 L. R. A. 777, 12 Am. St. Rep. 663], are cited in support of this contention; but neither of these cases is in point, because, by the statutes which were there held void, the fact that the person performing labor or furnishing material was not enjoined by the owner, or notified in writing not to do so, is made conclusive evidence that such labor was performed or material furnished with or by his consent, *without reference to his knowledge thereof;* while our statute, assuming that a lien cannot be created without the consent of the owner, express or implied, simply provides a rule of evidence by which such consent could be determined." (Italics ours).

The basis of the presumption raised by the statute is equitable estoppel. Fauser v. McElroy, supra; Nichols v. Levy (Nev.) 32 P. (2d) 120, 121. Our territorial Supreme Court early so recognized. Post v. Miles, supra.

Actual knowledge often stands in law as the equivalent of a required notice. In this

case, however, we are not put to a decision whether that principle applies to the notice required by section 82-210. All the actual knowledge appellee had was that appellant owned the property and that Townsend did not. That does not touch the subject-matter of the required notice. If appellant had posted a notice merely setting forth its ownership, it would have been worthless. The notice must state that the owner "will not be responsible." The "knowledge" here relied upon did not include the matter of responsibility. Under the California cases of Leoni v. Quinn and Pasqualetti v. Hilson, supra, it would not have availed, had it done so.

■ What has been said substantially refutes appellant's next contention, that, "where materialman furnishes upon the credit of one who knows he has no title, the provisions of section 82-204 apply."

The argument is that appellee never had any lien or right of lien except as to the vendee's interest, and that such lien or right was cut off by forfeiture of the interest.

It is probably true, as appellant contends, that a materialman contracting with one whose title is less than the fee simple obtains a lien or right of lien only as to that lesser interest unless he can "assist himself by some proof of estoppel."

But the statute points out what shall constitute the estoppel. It is the failure of the owner to post the property within three days after learning of the improvement. Here the facts raise the estoppel, unless appellee's knowledge as to the title is the equivalent of posting by appellant, and we have determined that it is not. ·

Considering sections 82-204 and 82-210 as in pari materia, as we did in Mitchell v. McCutcheon, 33 N. M. 78, 260 P. 1086, appellee here originally risked having its lien limited to the vendee's interest, but became entitled to the benefit of the larger lien, when appellant, by failing to post, acquiesced in the subjection of the vendor's interest also.

It seems no more necessary here than it was in Albuquerque Lumber Co. v. Tomei, 32 N. M. 5, 250 P. 21, 23, to decide "whether, by a declaration of forfeiture warranted by the terms of the contract," the vendor may cut off the lien on the vendee's interest. That question does not arise when the vendor has suffered the subjection of his own interest.

■■ Appellant's last point as taken from its brief is as follows: "Lien given by section 82-204, Comp. 1929, is upon the improvement itself and only incidentally upon the land, and where the improvement perishes through no fault of the landowner, the lien fails."

If the trial court ruled adversely to appellant upon this proposition, it only did so in awarding judgment to appellee in the face of a finding that the improvement commenced, and later abandoned, was of "no value" to the appellant's land as a betterment or otherwise. In so far as the mere finding of "no value" is concerned, standing alone, we consider it no obstacle to appellee's recovery.

While fundamentally and in a broad sense presumptive benefit to the land improved by another's labor or material from the begin-

ning has afforded constitutional justification for and still supports the theory of mechanics' lien legislation, yet so to recognize does not mean that a showing of benefit in a particular case is indispensable to the right to lien. The authorities are plainly against this view. Hardwood Interior Co. v. Bull, 24 Cal. App. 129, 140 P. 702; Chamberlain v. City of Lewiston, 23 Idaho, 154, 129 P. 1069; Nichols v. Levy (Nev.) 32 P.(2d) 120. Such a construction would greatly restrict the field of usefulness of these remedial acts as against those intended to be aided thereby.

Nor indeed do we understand appellant to contend that a showing of value or benefit in each particular case is essential to the existence of a lien. Yet its reasoning leads logically to such a conclusion.

It is entirely possible that the trial court attached no greater point to the finding of "no value" than we have accorded it in what has just been said. However, the appellant, arguing that such a finding puts the case as to controlling principles in the class of destruction and removal cases, invokes the rule applied in Pennsylvania and California, known as the "Pennsylvania doctrine." The theory of this doctrine is that, under statutes such as exist in the states named, the lien is primarily upon the building or structure and attaches to the land only as an incident to the lien on the building or structure.

For Pennsylvania cases enunciating the doctrine, see Presbyterian Church v. Stettler, 26 Pa. 246; Wigton & Brooks's Appeal, 28 Pa. 161; Short v. Miller, 120 Pa. 470, 14 A. 374; Short v. Ames, 121 Pa. 530, 15 A. 607; Titusville Iron-Works v. Keystone Oil Co., 130 Pa. 211, 18 A. 739; McCristal v. Cochran, 147 Pa. 225, 23 A. 444; Florin v. McIntire, 14 Pa. Co. Ct. R. 127; Thompson v. Porter, 14 Pa. Co. Ct. R. 232; Wheeler v. Pierce, Kelley & Co., 167 Pa. 416, 31 A. 649, 46 Am. St. Rep. 679; Alguire v. Keller, 68 Pa. Super. 279.

See, also, the California cases and an Oregon decision based on a copy of the California statute: Humboldt Lumber Mill Co. v. Crisp, 146 Cal. 686, 81 P. 30, 106 Am. St. Rep. 75, 2 Ann. Cas. 811; Linck v. Meikeljohn, 2 Cal. App. 506, 84 P. 309; Watson v. Alta Inv. Co., 12 Cal. App. 560, 108 P. 48; Butler v. Ng Chung, 160 Cal. 435, 117 P. 512, Ann. Cas. 1913A, 940; Kern v. San Francisco Co., 19 Cal. App. 157, 124 P. 862; Chenoweth v. Spencer, 64 Or. 540, 131 P. 302, Ann. Cas. 1914D, 678; Pilstrand v. Greenamyre, 34 Cal. App. 799, 168 P. 1161; Johnson v. Smith, 97 Cal. App. 752, 276 P. 146; McIntosh v. Funge, 210 Cal. 592, 292 P. 960, 74 A. L. R. 420; English v. Olympic Auditorium (Cal. App.) 13 P. (2d) 740, affirmed in part and reversed in part 217 Cal. 631, 20 P.(2d) 946, 87 A. L. R. 1281.

The holding of these cases is that, if there is no completed building or structure, or where after completion and before perfecting the lien the building or structure without fault of the owner is removed or destroyed, there is no lien. In other words, the lien on the land either does not come into being in the case of noncompletion, or, in so far as existent, disappears with that to which it was only an incident, in the case of removal or destruction.

The California cases have denied full application of the rule (a departure not noted in the Pennsylvania decisions), where the destruction is only partial. Where such is the case, in at least two decisions, the right to apportion the lien and attach it to what remains of the building and so much of the land occupied thereby seems to have been recognized. Butler v. Ng Chung and Kern v. San Francisco Co., supra.

Our statute having been adopted from California (Ackerson v. Albuquerque Lumber Co., 38 N. M. 191, 29 P.(2d) 714), we must first determine the bearing, if any, which this so called "Pennsylvania doctrine" has upon the question before us. The territorial Supreme Court in a dictum appearing in Armijo v. Mountain Electric Co., 11 N. M. 235, 67 P. 726, declined to support the Pennsylvania doctrine, by praising the reasoning of cases affirming the contrary. We should prefer not to rest our decision on this dictum, even if we considered perfect, as we do not, the analogy appellant seeks to draw between the present situation and destruction cases. The dictum is contrary to California decisions based upon a condition peculiar to the California statute, present also in ours, inasmuch as we adopted it.

We seek then the effect of the abandonment disclosed. This presents the decisive question. The abandonment was through no fault of the lien claimant, appellee. It was attributable to the vendee and resulted from his credit entanglements. Although not to be considered a voluntary abandonment, it is nevertheless to be deemed an abandonment through fault of the vendee, as owner. Cf. McIntosh v. Funge (Cal.), supra, where the destruction, although involuntary, was considered the fault of the owner, by reason whereof the court declined to apply the Pennsylvania doctrine and held the land charged with the lien.

It seems fairly well settled both upon reason and authority that abandonment, through fault of the owner, of work already commenced, does not defeat the right to lien. 18 R. C. L. 908; 40 C. J. 192; 2 Jones on Liens (3d Ed.) § 1438; Annotation, 64 A. L. R. 276, and cases cited.

The author of the text on mechanics' liens, at 18 R. C. L. 908, states the rule as follows: "When the work has been commenced on a contract for an improvement on land, and is abandoned by the owner without fault on the part of the contractor, the contractor and laborers and materialmen are entitled to liens on the property for the value of the work done and materials furnished. *In such a case, the building or improvement is to be deemed completed, so far as the right of persons to assert liens is concerned.*" (Italics ours.)

This rule developed as a matter of statutory construction under statutes similar to ours, although subsequently some states added the rule by way of amendment to the statute itself.

"In several states the general rule above referred to, that abandonment is equivalent to completion as regards the time for filing mechanics' lien claims, has been incorporated substantially into the statute itself." 64 A. L. R. 280.

In Hot Springs Plumbing & Heating Co. v. Wallace, 38 N. M. 3, 27 P.(2d) 984, as said in the later case of Allison v. Schuler, 38 N. M. 506, 36 P.(2d) 519, 522, "we assumed such to be the proper rule of construction," and further stated: "We there displayed a leaning toward the Oregon rule, and cited Eastern & Western Lumber Co. v. Williams, 129 Or. 1, 276 P. 257. That decision was shortly afterwards followed in Stark-Davis Co. v. Fellows et al., 129 Or. 281, 277· P. 110, 112, 64 A. L. R. 271."

In neither of these recent pronouncements, however, were we called upon to speak decisively upon the question. We now settle it by holding that abandonment through fault of the owner and without fault of the lien claimant constitutes constructive completion under our statute, both as respects the right to lien and the time within which it must be filed.

Then, is the vendor's interest to be charged along with that of the vendee, although the former actually may be blameless as respects the abandonment? Such is the clear import of the posting statute. Through failure to post after knowledge of the construction, the statute says the building or other improvement "shall be held to have been constructed *at the instance* of such owner or person having or claiming any interest therein, and the interest owned or claimed *shall be subject to any lien filed in accordance with the provisions of this article.* * * *" (Italics ours.)

Not only do we have a case where the work done is to be considered as having been ordered by appellant, but a lien filed therefor under the provisions of the act. By the very language just quoted nothing could be plainer than that the vendor's interest is subject to "any lien" so filed. Obviously, the purpose of the act was to give the vendor a way out by posting. If he fails to post, the divided interests are deemed united, under the implication arising, for the purpose of satisfying any valid lien filed consequent on improvements undertaken by the vendee.

So viewing the matter, our action will be to affirm the judgment of the lower court.

It is so ordered.

WATSON, C. J., and HUDSPETH and ZINN, JJ., concur.

BICKLEY, Justice (dissenting).

I am in agreement with much that has been said in the prevailing opinion, yet I think the conclusion reached is wrong because of faulty reasoning at the last.

To aid an understanding of this difference of opinion, we should be particularly careful in giving the word "owner" employed in our statute its proper signification. when applying principles declared in the statute and as used in the decisions of equity courts in moulding the remedy.

The prevailing opinion asserts that, if the vendor fails to post the notice of nonresponsibility, the divided interests contemplated by sections 82-204 and 82-210, Comp. St. 1929, are deemed united for the purpose of satis-

fying any valid lien filed consequent on improvements undertaken by vendee.

When a person performs labor upon, or furnishes materials to be used in the construction of, a building, he has a lien upon the same (building) for the work done or materials furnished. Section 82-202.

A building is a fabric, structure, or edifice built or constructed of component parts as of wood, brick, stone, etc., designed for use or convenience as a house, a church, a shop, and so forth. The person who labors upon or furnishes materials to be used in such construction, in so far as he may rely upon a mechanic's lien, relies upon a lien upon a completed building, and perhaps also upon an incidental lien upon the land upon which it is constructed. If he files a claim of lien, it is upon the building and/or the land. He does not file a lien upon a component part of the building, except under circumstances hereinafter noted, where the owner of the building abandons the construction when only a component part of the building has been erected. He would not indulge the futility of claiming a lien merely upon the stone or brick that have been placed in the walls or upon the nails which have been used to hold together the wooden portions of the building. It would be impractical to permit him to take out of the wall the stone or brick or nails that he had furnished and sell them. The lien on the whole building or structure is foreclosed, and the claimant is paid out of the proceeds of the sale. In so far as the primary lien is concerned, there is no difficulty —the lien is upon the building and upon foreclosure a court of equity would have power to order a sale and removal of the building from the land.

But the person having a lien upon the building has "also" a lien upon the land upon which the building is constructed, "if at the commencement of the work, or of the furnishing of the materials for the same the land belonged to the person who caused said building * * * to be constructed."

We have not so far come upon a division of estates. The land and the building "commenced" *belong* to the same person.

So we said in Albuquerque Lumber Co. v. Tomei, supra. We there held that, under section 82-202, the word "owner" has reference to the person causing the building to be constructed. This is true also under section 82-204, if, as a matter of fact, there is no division of estates. If, however, there is a division of estates, as for example between lessor and lessee or vendor and vendee, then a conditional vendee in possession, who causes the construction of the building to be commenced, is the "owner." Frieidenbloom v. Pecos Valley Lumber Co., 35 N. M. 154, 290 P. 797.

If the vendor, the holder of the legal title, knows that the work is being done and/or the materials are being furnished, for the construction of a building upon the land of which he holds the legal title, and fails to post the nonresponsibility notice referred to in section 82-210, he is also constructively the "owner" of a "building * * * constructed."

This is so, not because of any contractual relations between the vendor and the materialman or laborer, but by construction the statute has furnished a rule of evidence

whereby the vendor who in fact did not cause the construction of the building to be commenced is nevertheless to be *held* to have done so.

If the proof should show that the vendee is an *actual* agent of the vendor for the purpose of the construction of the building, it would perhaps be held that the vendor was in actual contractual relation with the laborers and materialmen and so has in fact caused the construction of the building to be commenced. No such situation is presented here, and in Albuquerque Lumber Co. v. Tomei, supra, we held that, where the vendee, in an executory land contract, is the builder merely in the sense that he is the person who causes the improvement to be made, he is not the vendor's agent so as to bind the vendor *or his property*.

We will be aided in understanding our problem if we keep in mind the basis of our lien law in so far as the lien upon the building attaches "also" to the land or an interest therein. In Howes v. Reliance Wire-Works Co., 46 Minn. 44, 48 N. W. 448, 449, the court said: "It is true that the lien law is based on the theory of the increased value of premises, caused by the work or materials furnished, but, where the work is interrupted or materials diverted through the fault or act of the owner, obviously the rule cannot be applied technically to defeat the lien. Esslinger v. Huebner, 22 Wis. 632. And it is now well settled that no loss of lien, for the work actually performed in accordance with the contract, is occasioned, where the work has been stopped or abandoned in consequence of the default of the owner. Phil. Mech. Liens, §

138; Charnley v. Honig, 74 Wis. 165, 42 N. W. 220; Kelly v. Rowane, 33 Mo. App. 444, 445. As is well stated in the Wisconsin case: 'If the contractor had completed the building according to the contract, no one would contend that he was not entitled to a lien if he had not been paid. How can he stand in a worse position when he has completed it as far as the defendant would allow him, and he asks for the contract price, less the cost of finishing it. It would allow the defendant to take away from the plaintiff one of his statutory rights by a violation of the contract.' "

So, in Chenoweth v. Spencer, 64 Or. 540, 131 P. 302, Ann. Cas. 1914D, 678, it was held that: "Under the Oregon Mechanic's Lien Law the lien of mechanics and materialmen for material and labor furnished in the construction of a building on land held under contract of purchase, the title remaining in the vendor, does not extend to the land where the improvement giving rise to the lien has been destroyed by fire."

The statutes involved were substantially the same as our own. The court says: "The plain purpose of this section [corresponding to our section 82-210] is to make the interest of the owner of the land subject to the lien, as provided in section 7417, L. O. L. [corresponding to our section 82-204], unless the notice provided for is given, but not to impose upon him all the liabilities of the person who caused the building to be constructed. It does not modify nor in any manner affect the extent or character of the lien upon the land as provided by section 7417, L. O. L. [corresponding to our section 82-204]. That is an

incident to the lien on the building for the convenient use and occupation thereof."

The court went on to say: "It appears in most of those statutes that the lien is on the building and ground only to the extent of the interest of the person constructing the building, while in a case such as the one involved here the theory of the lien against the lot is that the lot gets the benefit of the expenditure. If, however, the lien attaches to the lot of a stranger to the contract for the building, and the building is destroyed, the lot owner would get nothing. He was not a party to nor a beneficiary of the improvement, yet his lot would be sold to pay a large debt not incurred for anything that was ever to come to him or by which he was to benefit, which would be very inequitable, a result not contemplated by our lien law, and a condition not coming within its terms."

So far, then, in the case at bar, we find the lien of appellee upon the contemplated building left in such a state of incompleteness that the court found "that the work which Townsend did in putting in the foundation and starting on the walls of the dwelling house, in which work the plaintiff's materials were used, is of no value to Monte Vista Company's land, and did not contribute anything of value thereto in the way of betterments or otherwise," does not extend to the land belonging to vendor by reason of any contractual relations between vendor and the appellee. Such lien as there may be upon the incomplete structure does not attach to vendor's legal estate, because no building has been constructed.

But a mere foundation which was intended to be a part of a building contemplated may be held to be a building when the "owner" has abandoned construction, through no fault of the person furnishing labor or materials.

This rule, developed in the process of administering the remedy under statutes similar to ours, arises out of equitable considerations.

Where prematurity of filing the claim of lien is an issue, it is said the lien claimant ought not to be postponed in the assertion of his lien until the building is completed when the "owner" has stopped the work permanently or indefinitely. On the other hand, when the "owner" has permanently or indefinitely abandoned the work and this fact is brought to the knowledge of the lien claimant, the period of limitations within which a claim of lien may be filed ought to and does commence.

The word "owner," as used in the pronouncements of the rule, means the owner of the building.

The vendor who has put the vendee in possession, even though with implied permission to the vendee to improve the land by construction of a building (nothing more appearing), is out of the picture in so far as this rule is concerned.

The vendor, in the absence of contract to the contrary, has no control of the vendee or his property. He cannot require the vendee to commence or stop. He has nothing to say as to how the vendee shall finance the project so that he will not commence unless he can

finish. He has no control over the vendee's caprices or judgment. If the vendee commences work on a building and then stops the work short of completion, the vendor is powerless; he cannot, on this account merely, re-enter into possession and complete the work. The vendor has nothing to say as to the size and the architecture of the building commenced by the vendee, nor as to the materials · to be used or the prices to be paid therefor. If the improvements increase the value of vendor's fee-simple estate, it would not be primarily so, but only as a future incident thereto; so long as the relation of the vendor and vendee exists, the vendor will not become the "owner" of the building, the construction of which is caused to be commenced or completed by the vendee.

Where a building is commenced by a vendee in possession under an executory contract and then abandoned through fault of the "owner" of the building, the lien which has attached to the building in fact incomplete, but constructively complete because of the wrong or fault of the vendee (owner of building), "then only his (vendee's) interest therein is subject to such lien."

Under such a situation, the operation of the provisions of section 82-204 has been restored.

The failure to post the notice of nonresponsibility under conditions requiring it, under section 82-210, shows that, if a *building* is constructed on the land of which the vendor owns the fee simple estate, such vendor may not prevent such estate from being "also subject to the lien" (upon the building) by assert-

ing that the building has not been constructed at his request.

The vendor who has not in fact entered into any contract for the construction of a building is in the same situation of reliance upon a completed building as is the person performing labor on or furnishing materials for a building commenced. If the building is completed, it will presumably be of utility and value. At a lien foreclosure sale, the liens will likely be discharged and the incidental lien upon the vendor's estate will be discharged. He may with reasonable safety so rely and refrain from posting. If the building is constructed, he is protected by the enhanced value of his land interest. If liens are filed, the proceeds of a sale will probably discharge them. They might not, but that is the only chance which the vendor is required to take. The rule of evidence which submits his interest in the land to this hazard does not subject him and his interest in the land to the further hazard of the will of the owner of the building (vendee) to prevent an enhancement of value by stopping the work before anything of value has been put on the land. A foundation for a building commenced and which is abandoned when it has reached the foundation stage may be of as little value to the vendee as to the vendor, if no superstructure is ever erected upon it. But if statutory construction is to be indulged and requires that in justice a person who has performed labor upon such foundation, upon the faith of a ·continuation of the construction of a building to completion, shall not lose a lien when he is not at fault and the owner of the building commenced is

at fault, and such foundation shall be considered a building completed, then, so far as the incidental lien upon an interest in the land is concerned, only the interest of the vendee who was the owner of the building commenced, but not completed, can be subjected to the lien. It would be inequitable to permit the vendee, owner of the building, to take advantage of his own wrong to defeat the lien as against his interest in the land.

Failure to post the nonresponsibility notice under section 82-210 does not purport by such failure to make the vendor responsible for the vendee's wrongs and faults. It seems to me an unsound doctrine that a consequence visited upon the vendee owner and his property because of the vendee's wrongs shall be also visited upon the vendor and his property when the vendor has done no wrong and has been powerless to prevent the wrongs of the vendee.

The failure of the vendor to post the notice invites continuation of construction to the end of completion. It does not invite cessation of the work.

The majority rely upon the language of the statute that the "building * * * constructed * * * shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this article," and they read into the statute, it seems to me: "If at the commencement of the construction of the building the person who caused it to be commenced owns less than the fee simple estate in the land and he abandons the work before a 'building * * * is constructed' such abandonment 'shall be held to have been * * * at the instance and request' of the person who owns the fee simple estate and such estate shall be subject to the lien filed."

This is not in the statute and likewise no where does the statute in referring to "building" in terms allude to anything less than a completed building. The lien does not attach to less than a completed building because of the terms of the statute, but notwithstanding such terms.

Now, when a lien claimant comes into a court of equity requesting the chancellor to declare a lien upon land upon which no building has been constructed, he does not rely upon the statute, but upon the principle of estoppel that the person who authorized the improvement and abandoned it shall not be heard to invoke the terms of the statute requiring completion because his wrongdoing prevented completion. The lienor so far succeeds as to subject to the lien the interest of the wrongdoer in the land, not because of the statute but in spite of it. Equity having thus done justice does not require the chancellor to do an injustice by visiting the sins of the wrongdoer upon the innocent owner of the fee-simple estate.

Having invoked a rule based upon equitable considerations to do justice to the laborer and materialman, the application of which rule will do no injustice to the vendee by attaching the lien of the constructively completed building to the vendee's interest in the land, there seems to be no occasion to extend

the application of the rule so as to do an injustice to the vendor. In Jones on Liens, § 1438, it is said: "It would be inequitable and unreasonable, and contrary to the spirit of the law, to hold that parties are absolutely barred of all rights to the lien law, where the work is prematurely stopped or abandoned without fault of such parties. Such a construction would place materialmen and laborers at the mercy of the dishonesty, fickleness, or misfortunes of the owner or contractor." It is apparent that this rule arising out of equity would not have any application in the case at bar so as to attach the lien to the vendor's interest, because the vendor has no opportunity of affecting the situation by dishonesty, or fickleness, and is in no wise responsible for the situation which makes an incomplete building constructively complete.

The Michigan Supreme Court in Scales v. Griffin, 2 Doug. 54, thought it would be a monstrous doctrine "that the owner [of the fee simple estate], who has contracted to convey a lot upon certain terms, and given the possession until these terms be fulfilled, without parting with his title, but who, on account of a breach of the contract, was obliged to take possession of his land again, should be subject to be deprived of his title by virtue of such a lien for buildings erected for the contractor, and without the privity or consent of the owner."

That the failure of the vendor to post the statutory notice of nonresponsibility accomplishes this seeming injustice finds its justification in the consideration that the vendor's interest is to be enhanced in value by the construction on the land of a *building*, and we see the purpose of the rule of evidence. From application of further equitable principles, we find that what is not a building, but a mere hole in the ground, excavated preparatory to laying a foundation or the foundation itself, even though a detriment to the lot, will support an incidental lien on the land or an interest therein. Here the courts of equity, eager to do justice, say the lien claimant shall not be defeated of his incidental lien through the fault of the owner of the building. In other words, the owner of the building will not be permitted to say to the materialman: "You have no lien except upon a building completely constructed notwithstanding that it is my fault that it is not completed."

Equity, thus preventing injustice to the laborer and materialman, does no injustice to the vendee who created the situation requiring the application of the equitable rule so as to attach the lien to the interest in the land of him who has committed the wrong, but it does not go further and do an injustice to the vendor who was not at fault.

When we start in to give life and meaning to the statute by application of equitable doctrines, we should preserve rights without doing injustice. The distinction and division of estates sought to be preserved in section 82-204 will be preserved by extending the equitable rule that the owner's (owner of building) abandonment of the work upon a building is to be deemed a completion of it for the purpose of filing of mechanic's lien, and shall operate no further than to subject

the interest of the owner of the building in the land to the incidental lien.

In Shaw v. Stewart, 43 Kan. 572, 23 P. 616, 618, is an interesting suggestion to the effect that, when the courts have talked of construction of mechanics' lien statutes, they have not exactly meant construing the meaning of words in a statute from a lexicographer's viewpoint, but that, in a case of foreclosure of a mechanic's lien the court will consider the equities unless the spirit of the statute forbids. The court discussing the letter and the spirit of the statute said: "The foreclosure of a mechanic's lien under the statute is an equitable proceeding, in which the powers of the court are invoked to mould the remedy, within the provisions of the statute, to suit the circumstances of the case. In this action the equities are with the plaintiffs. They furnished all the lumber and hardware used in the building, and ought not in justice to be prevented from acquiring and enforcing their liens, because the contractor abandoned his work."

So I say we know that an excavation for a foundation or a foundation without a superstructure is not a *building*. The courts do not say it is a building, but that equitable principles will permit the materialmen and laborers to acquire and enforce their liens under certain circumstances, notwithstanding the letter of the statute. A court that can do this upon considerations of wrongs by the owner of the building ought to be able to shield those who are innocent of wrongdoing and powerless to prevent the wrongs alluded to.