HARRIS ET AL. *v*. MT. VERNON LUMBER CO., INC.

[No. 19,261. Filed April 12, 1961.]

*DeRoo Weber,* of Mt. Vernon and *Sydney L. Berger,* of counsel, of Evansville, for appellants.

*Steve C. Bach,* of Mt. Vernon and *Wm. L. Mitchell,* of counsel, of Evansville, for appellee.

MYERS, J.—This action was commenced by appellee, Mt. Vernon Lumber Co., Inc., which filed its complaint

against appellants, Payton Harris and Maybelle Harris, husband and wife, and one Jerry LaChance, wherein appellee sought to foreclose a mechanic's lien against property owned by the Harrises as tenants by the entirety, for materials furnished at the instance and request of LaChance.

The complaint alleged, in substance, that appellants were the owners of four acres of land in Posey County, Indiana; that they agreed to sell the real estate to La-Chance; that LaChance, with the knowledge and consent of appellant, Payton Harris, entered into an oral agreement with appellee to furnish material to improve the property; that all the materials were so furnished and used in the improvement, at the cost of $743.82, which sum was alleged to be due and unpaid; that a mechanic's lien had been duly and timely filed against the real estate. There was a prayer for judgment, foreclosure of the lien, and an order for sale of the property.

Appellants filed their answer, admitting ownership of the property and that they had entered into a contract for the sale of the property to Jerry R. LaChance and Vivian V. LaChance, his wife. Appellants denied the other allegations of the complaint.

Appellants filed a plea in abatement in which they stated that Vivian V. LaChance as the wife of Jerry R. LaChance was a necessary party defendant since she was equally interested with him in the contract of sale. To this appellee filed a demurrer, which was sustained by the court.

Trial was had by the court without a jury. Judgment was thereafter entered in favor of appellee in the amount of $743.82, plus $150 attorney's fee and costs, as against Jerry LaChance individually. The court found the real estate subject to a mechanic's lien. The

property was ordered sold to satisfy the judgment against LaChance.

Appellants filed their motion for new trial, based on the grounds that the decision of the court was contrary to law and not sustained by sufficient evidence. The motion was overruled and this appeal followed.

It is to be noted that a default judgment was entered against LaChance although he appeared at the trial and testified as a witness. He is not a party to this appeal.

Appellants argue that there is no evidence in the record and there is a complete failure of proof to establish the material allegations of appellee's complaint as to the following:

1. That appellee filed in the Recorder's Office of Posey County a notice of its intention to hold a mechanic's lien on the real estate in question within sixty days from the time the materials were furnished, or at any time.

2. That the materials were furnished by the authority and with the direction of the appellants as owners of the real estate.

3. That all materials in question were used in the particular building on which the lien was sought to be foreclosed.

The evidence in this case consisted of a stipulation and testimony introduced by the parties. From it we are able to determine that appellants were the owners in fee simple of the real estate located in Posey County, Indiana, together with the improvements thereon. On the 6th day of August, 1955, appellants entered into a written contract for the sale of the property with Jerry R. LaChance and Vivian V. LaChance, his wife, together with certain store fixtures, inventory and household furnishings. The improvements on the real estate consisted of a stone building, with storerooms down-

stairs and a residence upstairs. At the time the residence was in an unfinished condition. Appellants used the downstairs as a grocery store and the upstairs as their living quarters. LaChance intended to operate the store as a combined grocery store and beer tavern and make use of the upstairs as a home for his wife and family. In order to do so it was necessary to remodel the storerooms and finish the upstairs. This had been discussed previously between LaChance and appellants, and it was agreed between them that LaChance could proceed with the remodeling and start work on the premises as soon as the contract was signed.

LaChance dealt with appellee through one Ike Todd, who claimed himself to be a "co-owner" of the corporation. He came out to the premises soon after the contract was executed. Todd and LaChance were shown about the building by Payton Harris. Todd made a list of the materials needed, and, pursuant to LaChance's order, began to deliver them at the site. LaChance stated that he commenced the work on August 8th in the downstairs part of the building. The Harrises were still living in the upstairs and did not vacate the premises until August 12th, at which time they went to Chicago and later to Canada. At the time of the trial they were living in Florida.

Appellee continued to deliver the necessary materials to LaChance, the last delivery receipt being dated October 13, 1955. It appears that LaChance had been unable to obtain a beer license to operate the tavern. Without the tavern he felt that he could not make a success of the business, so he rescinded the contract of sale and failed to make payments on the improvements. Appellee filed a notice to hold the lien on November 18, 1955. There was evidence that appellants subsequently sold the property to one Ralph Caputo, who

was buying it on contract and who was occupying it at the time of trial.

Appellants assert there is no evidence that appellee filed notice of its intention to hold a mechanic's lien on the real estate within sixty days from the time the materials were furnished. A stipulation was entered into by the parties at the commencement of the trial, wherein it was agreed that a copy of the notice of mechanic's lien referred to, and attached to appellee's complaint, and marked Exhibit A, was a true and correct copy of the notice which had been filed by appellee on November 18, 1955, at 8:30 a.m., in the Recorder's Office of Posey County, Indiana, and recorded in Miscellaneous Record 12, at Page 251. It was also stipulated that appellants were the owners of the real estate involved herein.

At this point the record reveals the following proceedings in regard to the stipulation, which apparently was being dictated to the Court Reporter in open court:

"From March 25, 1948 to the present time, according to the records of ownership in the recorder's office of Posey County, Indiana, and that said Payton Harris and Maybelle Harris were the said legal owners of said real estate, during said time except that they did enter into a contract for the sale of said real estate with the defendant Jerry LaChance and Vivian LaChance on August 6, 1955 and that since the filing of the mechanic's lien, referred to as Plaintiff's Exhibit A, the said Payton Harris and Maybelle Harris, have entered into another contract—

"MR. WEBER: I would not agree with that. I agreed with him to stipulate that they owned the real estate from the time they bought it up to the present time.

"MR. BACH: Just strike that entire stipulation.

"MR. BACH: It is hereby stipulated between Mount Vernon Lumber Company, Inc. and Payton

Harris and Maybelle Harris, that Payton Harris and Maybelle Harris have according to the records concerning title in Posey County, Indiana, be the owners of the real estate described in Plaintiff's Exhibit A from March 25, 1948 to the present time."

Appellants insist that when Mr. Bach, who was the attorney for appellee, stated: "Just strike that entire stipulation," all that part of the stipulation previously agreed to concerning the notice of lien and the filing thereof, was stricken from the record, and that, consequently, there is no evidence to be considered about the notice of lien and filing thereof, since no attempt was made thereafter to introduce it in evidence.

We cannot agree with appellants' interpretation of Mr. Bach's statement. It is obvious that Mr. Weber's objection was to the interjection of "another contract" in the stipulation which went beyond the fact of ownership to which they had agreed was to be included in the stipulation. Thereafter it was immediately corrected by Mr. Bach without further objection. We find that the stipulation clearly included the fact of notice of lien being filed and recorded. As Mr. Bach's case was predicated upon these facts, it is obvious to us he did not intend that his statement referred to above would have the effect of striking out all parts of the stipulation theretofore agreed to. There was no dispute over the fact that the last delivery of materials was made on October 13, 1955. Thus we find that the record plainly reveals that there was a notice of lien which was filed within the statutory period of time.

Appellants next charge complete failure of evidence to show that the materials were furnished by the authority and with the direction of appellants as owners

of the real estate. They argue that at most they gave only inactive consent to the furnishing of the material, and quote the following authority:

"A person in possession of real estate under a contract of purchase cannot defeat or cloud the vendor's title by suffering a mechanic's lien to be filed against such real estate for improvements made thereon by him. In order that a lien may attach to the real estate it is necessary that such materials should be furnished or labor performed by the authority and direction of the owner and something more than mere inactive consent on the part of such owner is necessary in order that such lien may be acquired against him. *Holland* v. *Farrier* (1920), 75 Ind. App. 368, 130 N. E. 323; *Peoples Savings, Loan and Building Assn.* v. *Spears et al.* (1888), 115 Ind. 297, 301, 17 N. E. 470; *Rush* v. *Pittman* (1904), 34 Ind. App. 159, 162, 72 N. E. 473; *Toner* v. *Whybrew* (1911), 50 Ind. App. 387, 98 N. E. 450; *Robert Hixon Lumber Co.* v. *Rowe* (1925), 83 Ind. App. 508, 149 N. E. 92." *Courtney* v. *Luce* (1936), 101 Ind. App. 622, 626, 200 N. E. 501, 503.

We think the rule is well expressed, and certainly have no quarrel with it. However, appellants do not fall within it. A review of the evidence on this point shows that Payton Harris was fully aware of what LaChance had in mind as to remodeling the building when the contract of sale was executed. He testified that it was all right for LaChance to improve the property if he wanted to, so long as he did not tear it down. They had discussed finishing some bedrooms before the contract was signed. Harris admitted that he gave LaChance permission to cut a hole through a wall in order to place a door therein so that there would be extended space for the tavern. In connection therewith, Harris was asked on the witness stand if he had said that was "all right." He an-

swered: "Why sure it was all right if he was going to improve it and pay for it."

Harris took Ike Todd and LaChance around the building shortly after the contract had been signed. He showed them the rooms, gave them measurements, and discussed the improvements with them. He is reported to have said that LaChance could use some materials owned by him and located in the dwelling for the improvement of the upstairs.

Harris admitted that he did not require a down-payment on the property, as LaChance could use such money to stock the store and buy tavern equipment. This was done even though the sale price was in the sum of $22,100, and there was some evidence that Mrs. LaChance owned property, including oil wells. Previously he had demanded a down-payment of $2,000. Harris testified that the LaChances told him they had $3,000 with which to do the work, but if they had paid him money down they would not have had enough with which to start the business. At this time Harris knew that LaChance was going to remodel the building so as to have a tavern. It may be inferred that he preferred to have improvements and remodeling done by LaChance rather than to accept a down-payment for the purchase of the premises.

Appellants were in possession of the premises when LaChance commenced his work thereon. They both understood what he was doing. It must be assumed that they knew the material which was going into the remodeling would enhance the value of their property to the extent of the materials furnished. The beer permit had not been obtained when the work was started. They knew that LaChance needed that permit before he could operate his tavern. LaChance testified that he told them that "we could not make it if we did not get a beer

license and had the grocery store alone." LaChance was asked what Harris said when he told him that. The following is from LaChance's testimony:

"A. He said, like we did, we felt sure we would get a liquor license.
"Q. What did he say in case you didn't?
"A. Nothing was said. We told him if we did not get a liquor license, we could not get on with it."

Appellants must have recognized the possibility that LaChance would not be granted the license (as, indeed, turned out to be the case), in which event the property would return to them together with the improvements.

The facts in this case do not bring it within the rule of inactive consent urged by appellants. The word "inactive" has been defined as: "Not active"; "having no power to move"; "that does not or cannot produce results"; "inert"; "not disposed to action or effort"; "not busy"; "idle." Webster's New International Dictionary, 1931 Edition. We find that the actions of appellants were more than idly sitting by knowing that work was being done on the building. They both had knowledge that materials were being furnished and going into the remodeling. They made no objection. The actions on the part of Payton Harris were more than negative, and amounted to affirmative acts. The statements on the part of his wife indicated that she had agreed with everything that her husband had said to and done with LaChance. They would indicate she ratified her husband's actions. *Means et al.* v. *Everitt et al.* (1960), 131 Ind. App. 370, 167 N. E. 2d 885.

Finally, appellants claim there is no evidence that all the materials were used in the building. There is no question but that all materials ordered by LaChance

were delivered to the premises. He was asked this question on the witness stand:

"Q. Do you know of your own personal knowledge, whether or not all those materials were used in the improvement of the store building and the residence?"

His answer was:

"A. Everything was, except the wallboard, and that was left downstairs in the kitchen; that I did not use in the wall, the insulation."

LaChance was asked if he had knowledge that the wallboard and insulation had been put in since he released the contract of sale. He answered:

"A. It has been, I guess. I couldn't swear to that. I know the material was there for them to use; whether they used it or not I don't know."

Ike Todd testified that every piece of material was delivered to the premises, and he said: "I expect most of it was used." He further testified that one time he went out to the place, carrying some paint to be used, when the store was practically finished, "and everything used up in there and made a very nice building out there."

Mr. Caputo, the occupant at the time of trial, testified that when he went into the premises, the upstairs had a floor on it, and studdings for the rooms, and it was wired for electricity. The wallboard was there, but not put up. He was not permitted to state whether or not he had since put it up.

We think there is sufficient evidence to establish the fact that a substantial portion of the materials went into and became part of the building. *Kendall Lumber & Coal Co.* v. *Roman* (1950), 120 Ind. App. 368, 91 N. E. 2d 187. If the wallboard and

insulation were not used by LaChance, they were left on the premises to be used by any subsequent purchaser. There is no positive evidence that Mr. Caputo did not make use of them.

An examination of the record discloses that the trial court was warranted in finding that there was sufficient evidence to sustain the material allegations of the complaint.

Judgment affirmed.

Ax, C. J., and Cooper and Ryan, JJ., concur.

NOTE.—Reported in 173 N. E. 2d 672.