Ed O'Hara and Wickes Corporation *v.* Architects Hartung and Associates.

[No. 1-1074A151. Filed April 22, 1975.]

*Don M. Robertson, Bunger, Harrell & Robertson,* of Bloomington, for appellants.

*Edward F. McCrea, McCrea & McCrea,* of Bloomington, for appellee.

LOWDERMILK, J.—Appellants Ed O'Hara (O'Hara) and Wickes Corporation (Wickes) appeal a judgment of the trial court awarding appellee Architects Hartung and Associates (Hartung) $5,810.50 and attorneys fees and foreclosure of a mechanics lien on certain real estate owned by Wickes for architectural services furnished by Hartung.

The pertinent facts establish that O'Hara, as president of the Varsity Development Corporation (Varsity) and Wickes entered into a business relationship for the purpose of constructing an apartment building on certain real estate. O'Hara and Wickes contracted that Varsity would sell the real estate to Wickes and that Varsity would then re-purchase the property within six months of the original sale date. Further arrangements were that Wickes would supply all building materials for the proposed apartment building, and O'Hara would provide supervisory input.

O'Hara and Wickes had previously engaged in the construction of another apartment building and, because of past difficulties regarding materials, decided that detailed plans of the new building would be necessary so that accurate price calculations could be made.

The evidence discloses that a Wickes employee requested that O'Hara employ an architect for the purpose of obtaining detailed plans, and further indicated that Wickes would pay the architect's fee.

Sometime thereafter Hartung sent a letter to O'Hara setting out fee schedules and requesting an initial payment. This letter was forwarded to Wickes, and a check to Hartung was issued by the area manager of Wickes in the amount requested.

Although the plans were completed by Hartung, O'Hara and Wickes refused to pay the resulting fee and Hartung then instituted suit to foreclose a mechanics lien on the real estate involved.

The arguments presented on appeal are as follows:

Wickes contends there could be no contract between it and Hartung for the performance of architectural services because the evidence was insufficient to show that Wickes and O'Hara were involved in a joint business venture. Further, Wickes contends that there can be no mechanics lien on the real estate involved because the services performed by Hartung did not improve nor add value to the real estate.

Wickes' first argument assumes that a mechanics lien may arise only from a contractual relationship. This assumption, however, is erroneous. IC 1971, 32-8-25-1 ■ (Burns Code Ed.) provides, in pertinent part, as follows:

"[R]egistered architects . . . shall have the right to secure and enforce the same lien that is now given to contractors, sub-contractors, mechanics . . ."

Further, IC 1971, 25-4-1-17 (Burns Code Ed.) provides that architectural practices include:

". . . the . . . planning, designing, erection, alteration, or enlargement of any public or private building . . . when such professional services require the application of the art and science of construction based upon the principles of mathematics, aesthetics, or the physical sciences . . . and when such services are performed through the media of consultation, evaluation, investigation, preliminary study, plans, specifications, contract documents, or supervision of construction . . ."

The statute does not state whether such services must arise from a contractual relationship.

We are guided, however, by several pertinent cases. In *Courtney* v. *Luce* (1936), 101 Ind. App. 622, 200 N.E. 501, our Supreme Court stated that a mechanics lien would arise if:

". . . materials should be furnished or labor performed by the authority and direction of the owner and something more than mere inactive consent on the part of such owner is necessary in order that such lien may be acquired against him." 200 N.E. at 503. Thus, while there must be some active consent, it need not be evidenced by a formal contract. *Harris* v. *Mount Vernon Lumber Co.* (1961), 131 Ind. App. 593, 173 N.E.2d 672; *Woods* v. *Deckelbaum* (1961), Ind. App., 178 N.E.2d 544, (Reversed, 244 Ind. 260, 191 N.E.2d 101.)

The most recent case on this issue is *St. Joseph's College* v. *Morrison, Inc.* (1973), 158 Ind. App. 272, 302 N.E.2d 865, 873, wherein this court stated:

"The [Mechanics Lien] Statute does not require a contractual basis for work done. On its face, it may fairly be interpreted as only requiring a mechanic to notify the land-

owner of the specific amount of his lien and the description of the real estate subject to the lien without regard to the existence or non-existence of any contractual relationship between the mechanic and the landowner.

Although a contract may be used to establish a prima facie case, the true basis of the lien is that the improvement was made with the *consent* of the owner." (Emphasis supplied.)

The above language makes it clear that whether or not there was a joint venture between Wickes and O'Hara the lien may attach if it can be shown that Wickes gave active consent to the performance of architectural services by Hartung.

A joint venture (or adventure) is generally described as:

" 'An association of two or more persons to carry out a single business enterprise for profit', for which purpose they combine their property and services." *Baker, et al.* v. *Billingsley et al.* (1956), 126 Ind. App. 703, 132 N.E.2d 273; *Indiana Gross Income Tax Division* v. *Musselman* (1965), 139 Ind. App. 525, 212 N.E.2d 404.

Further, it is usually necessary to show that each party retains some control over the venture, and that both profits and losses were to be shared. *Baker, supra; Lee Bros.* v. *Jones* (1944), 114 Ind. App. 608, 54 N.E.2d 108.

Finally, as to third parties, each joint adventurer is the agent of the others for all acts within the scope of the enterprise. *Hogle* v. *Reliance Mfg. Co.* (1943), 113 Ind. App. 639, 48 N.E.2d 999.

There is conflicting evidence as to the action taken by Wickes with regard to the hiring of Hartung and the use of the architectural plans in relation to the proposed apartment building. On appeal, however, we cannot weigh the evidence and it is well settled that this court will look only to the evidence and inferences therefrom most favorable to the appellee. *Phar-Crest Land Corporation* v. *Therber* (1969), 251 Ind. 674, 244 N.E.2d 644; *Harris* v. *Second National Bank of Hamilton, Ohio* (1970), 146 Ind. App. 468, 256 N.E.2d 594.

Considering only the evidence most favorable to Hartung we must conclude there was sufficient evidence to support the lien and foreclosure on either of two grounds.

First, the evidence shows that Wickes and O'Hara were pooling capital, talent and material for the purpose of constructing an apartment building. Such evidence is sufficient in this case to show a joint venture. In this regard, then, it is only necessary to determine whether the acts of O'Hara were within the scope of the venture, so that all members thereof would be bound. We hold that O'Hara's request for architectural plans was clearly within the scope of the venture here involved.

Second, we conclude that even if there was no finding of joint venture, there was sufficient evidence that Wickes, the record owner of the property, gave active consent to Hartung. Although Hartung was contacted by O'Hara, in the name of Wickes, and Hartung should have been on notice that O'Hara was not the then record owner, Hartung was justified in continuing work after he received the initial payment check from Wickes, without objection to, or discussion of the proposed services and fee schedule as prepared by Hartung.

We now address Wickes' argument that the mechanics lien could not attach because the land was not improved as a result of Hartung's services.

Wickes contends that the plans drawn up by Hartung did not improve the real estate because the building was, in fact, never erected.

We would agree with Wickes' general proposition that in most cases the materials must be used in the erection of a building. However, exceptions to this general rule have been made.

In *Scott* v. *Goldinghorst* (1890), 123 Ind. 268, 24 N.E. 333, 334 it was held that:

"If the work be done or material be furnished for the use or purpose designated in the statute, the right to acquire a lien is complete, and the law is not so unjust as to defeat

the right to the lien because the owner may for any reason fail to complete the work."

Further, in *Jackson* v. *J. A. Franklin & Son* (1939), 107 Ind. App. 38, 23 N.E.2d 23, 25, this court recognized that:

"It is not *always* necessary to show that the material went into the building. Circumstances in a given case may be such that the owner of the building is estopped from invoking the general rule."

In addition, we cannot close our eyes to the practical consideration that in most instances the services performed by the architect will be complete before the actual building begins.

We find that it was not necessary to show that actual construction had begun before Hartung's services would be considered an improvement on the real estate sought to be foreclosed. In light of the fact that O'Hara and Wickes had the plans drawn up to facilitate accurate cost estimates, it is a fair conclusion that the plans completed by Hartung were of no small assistance in helping Wickes and O'Hara make decisions with regard to the proposed building.

It is not disputed that Hartung was a registered architect and we hold that the services performed by Hartung were such as would bring him within the above statutes providing for a mechanics lien.

Finding no reversible error, the judgment of the trial court is affirmed.

Robertson, C.J., and Lybrook, J., concur.