845 P.2d 125

**CUBIT CORPORATION,
Plaintiff–Appellee,**

v.

**Travis M. HAUSLER, Defendant–
Appellant.**

**No. 20033.**

Supreme Court of New Mexico.

Aug. 25, 1992.

J. Robert Beauvais, Ruidoso, for defendant-appellant.

Mel B. O'Reilly, Albuquerque, for plaintiff-appellee.

OPINION

FROST, Justice.

In 1984, Cubit Corporation sought to foreclose its claim of a mechanic's lien against property owner Travis M. Hausler in the amount of $4,573.78 for planning and design services relating to real estate which was to be part of a planned community development in Lincoln County, New Mexico. As a result of Hausler's subsequent bankruptcy proceedings, the case was closed subject to reopening upon proper application. Reinstatement occurred in January 1990 with the parties stipulating to submission of the case on briefs and depositions in lieu of trial.

The trial court issued a letter decision in November 1990, which subsequently was withdrawn and set aside. A bench trial was held in March 1991, with findings of fact, conclusions of law, and judgment for Cubit entered in May. All of Cubit's requested findings of fact and conclusions of law were adopted by the court; Hausler's trial counsel failed to file any proposed findings and conclusions. The trial court concluded that personal judgment against Hausler was barred under 11 U.S.C. § 524 (1988 & Supp. II 1990); that the court had in rem jurisdiction over the subject property which was not included in Hausler's bankruptcy estate; that Cubit established a valid claim of lien; and that the project was abandoned by Hausler without fault of Cubit, constituting completion under *Albu-*

*querque Lumber Co. v. Montevista Co.*, 39 N.M. 6, 38 P.2d 77 (1934). In addition to foreclosing the claim of lien, the judgment awarded Cubit costs and attorney fees. We affirm.

■ Before discussing the merits, we note, that Hausler attempts to support his argument by referring to portions of the trial tapes without specifically challenging any findings or conclusions entered by the district court.[1] Our law is clear that oral statements by the court do not constitute its decision. *Peace Found., Inc. v. City of Albuquerque*, 76 N.M. 757, 758, 418 P.2d 535, 536–37 (1966); *Pritchard v. Halliburton Serv.*, 104 N.M. 102, 105, 717 P.2d 78, 81 (Ct.App.), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986); *Walker v. L.G. Everist, Inc.*, 102 N.M. 783, 790, 701 P.2d 382, 389 (Ct.App.), *cert. denied*, 105 N.M. 94, 728 P.2d 845 (1985); *see also* SCRA 1986, 1–052(B) (Repl.Pamp.1992). A district court's oral remarks are subject to change at any time before entry of its decision. *Mathieson v. Hubler*, 92 N.M. 381, 390, 588 P.2d 1056, 1065 (Ct.App.), *cert. denied*, 92 N.M. 353, 588 P.2d 554 (1978). Moreover, "[h]aving failed to request findings and conclusions, [Hausler] cannot obtain a review of the evidence." *Peace Found., Inc.*, 76 N.M. at 758, 418 P.2d at 537. Accordingly, all findings entered by the district court are deemed conclusive. SCRA 1986, 12–213(A)(3) (Repl.Pamp.1992).

We further note Hausler's violation of Rule 12–213(A)(2) in failing to include references to the record in the summary of facts. Counsel for appellant is encouraged to comply with our appellate rules in the future. *See Fenner v. Fenner*, 106 N.M. 36, 41–42, 738 P.2d 908, 913–14 (Ct.App.) (appellate counsel advised to read and fol-

low rules to avoid future violations), *cert. denied*, 106 N.M. 7, 738 P.2d 125 (1987).

■ Hausler presents two factual grounds for the contention that Cubit was not entitled to claim a lien; however, both were incorporated into the court's findings of fact and, as stated above, are deemed conclusive on appeal. In affirming the judgment, we discuss only the legal question of whether a mechanic's or materialman's lien can attach to property where no improvement occurred due to the owner's abandonment of the project through no fault of the claimant. This question presents an issue of first impression in New Mexico, although several New Mexico cases have addressed closely related issues. Our holding today extends New Mexico law to permit a lien on unimproved property under certain limited circumstances.[2]

The statute under which a mechanic's or materialman's lien may be claimed, NMSA 1978, Section 48–2–2 (Cum.Supp.1992), states in pertinent part:

> Every person performing labor upon, providing or hauling equipment, tools or machinery for, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, ... or any other structure, who performs labor in any mining claim, or is a registered surveyor or who surveys real property has a lien upon the same for the work or labor done, for the specific contract or agreed upon charge for the surveying or equipment, tools or machinery hauled or provided, or materials furnished by each respectively, whether done, provided, hauled or furnished at the instance of the owner of the building or other improvement or his [or her] agent, and every contractor, subcontractor, architect, builder or other person

---

1. Hausler only cited finding of fact number 14 and conclusion of law number 5 as a reference for his statement of the issue.

2. In extending our lien law, we are mindful of the dicta announced in *Lembke Construction Co. v. J.D. Coggins Co.*, 72 N.M. 259, 382 P.2d 983 (1963), wherein this Court upheld the denial of a mechanic's lien based on the value of rental equipment used in construction. The *Lembke* court, while recognizing "changed methods and

conditions in construction work generally," left to the legislature the question of basing a claim of lien on machinery rental, rather than "enlarg[ing] the scope of our present lien law by judicial construction." 72 N.M. at 267, 382 P.2d at 988–89. Our holding is not an unwarranted extension of the lien law as it only expands the judicial construction of current law and does not enlarge its scope as enacted by the legislature.

having charge of any mining, or of the construction, alteration or repair, either in whole or in part, of any building or other improvement shall be held to be the agent of the owner for the purposes of this section.

■ "The purpose of our lien statute is 'to protect those who, by their labor, services, skill, or materials furnished, have enhanced the value of the property sought to be charged.'" *Vulcraft v. Midtown Business Park, Ltd.*, 110 N.M. 761, 765, 800 P.2d 195, 199 (1990) (quoting *Hobbs v. Spiegelberg*, 3 N.M. 357, 363, 5 P. 529, 531 (1885)). Although in derogation of the common law, the lien statute is remedial in nature, equitable in its enforcement, and is to be liberally construed. *Vulcraft*, 110 N.M. at 765, 800 P.2d at 199; *Lyons v. Howard*, 16 N.M. 327, 331, 117 P. 842, 843 (1911). In interpreting our lien law, New Mexico appellate courts have looked with favor to California case law for guidance. *See Lembke Constr. Co. v. J.D. Coggins Co.*, 72 N.M. 259, 261, 382 P.2d 983, 984 (1963); *Tabet v. Davenport*, 57 N.M. 540, 542, 260 P.2d 722, 723 (1953). Our discussion of this issue will consider relevant case law from other jurisdictions as well.

■ Under present New Mexico law, an architect is entitled to a mechanic's lien for preparing and furnishing plans, even if the architect does not supervise the construction, so long as the plans are actually used in the construction of the building. *Gaastra, Gladding & Johnson v. Bishop's Lodge Co.*, 35 N.M. 396, 299 P. 347 (1931). In resolving a priority question between an architect and mortgage holder, a federal bankruptcy court in *In re Commercial Investments, Ltd.*, 92 B.R. 488 (Bankr. D.N.M.1988), interpreted the *Gaastra* holding as follows:

> [S]ome physical work must commence on the designed structure in order for the architect's lien to rise. The *Gaastra* case requires that the architect's plans be actually used in the construction before the architect is entitled to a lien. Therefore, the lien cannot arise until some physical work has commenced upon

the site (or until materials have been delivered thereto).

*Id.* at 491. Several New Mexico cases, however, have suggested that abandonment of a project, if through no fault of the lien claimant, does not affect the claimant's right to a mechanic's lien.

In *Dysart v. Youngblood*, 44 N.M. 351, 102 P.2d 664 (1940), the only improvement upon the property was a dry water well, which the trial court characterized as a "structure" within the contemplation of the statute. A lien was established on the well and the land upon which it was situated, on the theory that the land was needed for the "convenient use and occupation" of the well. *Id.* at 352, 102 P.2d at 664–65. The court based its holding on "the evident intention of the Legislature to protect laborers and materialmen against loss." *Id.* at 353, 102 P.2d at 664–65. Of significance, however, for our purposes, is the *Dysart* court's ruling that "[i]t makes no difference ... that the improvement was abandoned, and therefore worthless as adding value to the land. The lien obtains for what it is worth, if the abandonment occurred through no fault of the lien claimant." *Id.* at 355, 102 P.2d at 667 (citing *Albuquerque Lumber Co. v. Montevista Co.*, 39 N.M. 6, 38 P.2d 77 (1934)).

The district court based its conclusion that Hausler's abandonment of the project constituted completion under *Albuquerque Lumber Co. v. Montevista Co.*, which upheld a lien attached to property where the improvement had commenced but later was abandoned by the property owner. The claimant successfully filed a lien against the property upon which only a foundation and part of a wall had been constructed before the project was abandoned through no fault of the claimant. This Court held that the worthless improvement presented no obstacle to the claimant's recovery. 39 N.M. at 12, 38 P.2d at 81. In so holding the Court stated:

> While fundamentally and in a broad sense presumptive[,] benefit to the land improved by another's labor or material from the beginning has afforded constitutional justification for and still sup-

ports the theory of mechanics' lien legislation, yet so to recognize does not mean that a showing of benefit in a particular case is indispensable to the right to the lien.... Such a construction would greatly restrict the field of usefulness of these remedial acts as against those intended to be aided thereby.

*Id.* at 12–13, 38 P.2d at 81 (citations omitted). Accordingly, the Court incorporated into New Mexico lien law the general rule that "abandonment [of construction] through fault of the owner and without fault of the lien claimant constitutes constructive completion under our statute, both as respects the right to lien and the time within which it must be filed." *Id.* at 15, 38 P.2d at 82.

Application of this rationale to the case at bar is consistent with the well-established public policy behind our lien law as announced in *Ford v. Springer Land Ass'n*, 8 N.M. 37, 41 P. 541 (1895), *aff'd*, 168 U.S. 513, 18 S.Ct. 170, 42 L.Ed. 562 (1897) (quoted with approval in *Dysart*, 44 N.M. at 356, 102 P.2d at 667). Justice Laughlin, writing for the *Ford* court, stated that a lien claimant has "the right to rely [on the lien statutes] for protection to secure payment for his [or her] labor," for which the legislature "meant to provide security." 8 N.M. at 60, 41 P. at 548. The question in *Ford* was whether all the land served and benefitted by a ditch system, or simply the ditch system alone, was subject to the lien. "To hold that this lien attaches only to the ditch system ... would be, in effect, to render the security for the payment of [claimant's] demands practically valueless, and to defeat the very spirit and intent of the law...." *Id.* Cubit's and other claimant's reliance on the lien statute to secure payment for services is one aspect of the public policy we wish to protect through our holding.

Neither *Dysart*, which established a lien for a dry well, nor *Albuquerque Lumber*, which upheld a lien for a worthless, abandoned improvement, precisely addresses the issue at hand. Accordingly, we turn for guidance to those jurisdictions which have squarely confronted this issue. In *Lamoreaux v. Andersch*, 128 Minn. 261, 150 N.W. 908 (1915), the Minnesota Supreme Court, by applying the doctrine of constructive improvement, upheld an architect's lien for services in preparing plans and specifications when the land was not benefitted due to the owner's repudiation of the construction agreement and abandonment of the project prior to commencement of work. The lien statute construed was similar to California's. In reaching its decision, the court emphasized the fact that the property owner, and not the lien claimant, was at fault for abandoning the project. *Id.* 150 N.W. at 911. The concept of constructive improvement as used in *Lamoreaux* is similar if not identical to the idea of constructive completion as applied by this Court in *Albuquerque Lumber*.

*Nolte v. Smith*, 189 Cal.App.2d 140, 11 Cal.Rptr. 261 (1961), is an important California case in this area of law. Engineer Nolte, employed to subdivide land into lots, surveyed, set permanent markers and monuments, and prepared a subdivision map. Because the property owners failed to post bond, however, construction never began. The trial court held that Nolte's work was lienable because it was the commencement of a "work of improvement" as that term is defined in the California lien statutes. The *Nolte* court extensively discussed *Lamoreaux*, but reserved ruling on whether to adopt *Lamoreaux* because it determined that the setting of markers and monuments satisfied the on-site construction requirement. *Id.* 11 Cal.Rptr. at 266–67; *see also Design Assocs., Inc. v. Welch*, 224 Cal. App.2d 165, 36 Cal.Rptr. 341, 345 (1964) (recognizing exception "where the project fails through the fault of the person whose interest is sought to be charged he is estopped to deny its benefit"). In the case of *McDonald v. Filice*, 252 Cal.App.2d 613, 60 Cal.Rptr. 832 (1967), when presented with an issue similar to the one in the case at bar, the court noted *Lamoreaux* "with interest," but did not determine whether to adopt its holding since the parties in *McDonald* mutually agreed to abandon the construction project prior to commencement. *Id.* 60 Cal.Rptr. at 836–37.

Other California cases, *Walker v. Lytton Savings & Loan Ass'n*, 2 Cal.3d 152, 84 Cal.Rptr. 521, 465 P.2d 497 (1970), and *Tracy Price Associates v. Hebard*, 266 Cal. App.2d 778, 72 Cal.Rptr. 600 (1968), involving issues of priority among creditors, found *Lamoreaux* restricted only to the issue of lienability of an architect's claim against the property owner and not against other claimants and mortgagees. "The distinction between the rights of mechanics against the owner of the property where no priority issue exists and the adjustment of relative priorities of third parties in the property is crucial." *Ketchum, Konkel v. Heritage Mountain Dev. Co.*, 784 P.2d 1217, 1221 (Utah Ct.App.), *cert. denied*, 795 P.2d 1138 (1990). Thus, commencement of construction is only a condition precedent to giving a mechanic's lien priority over subsequent liens, but when a claimant only seeks a lien against the property owner, the principle of *Lamoreaux* is applicable. *In re Morrell*, 42 B.R. 973, 978 (Bankr. N.D.Cal.1984).

Allowing [a claimant's] lien to stand is also not inconsistent with the idea that visible construction on the site serves to notify potential lenders of existing liens. That is because the architect can only assert the lien against the interest of the one who contracted for his services, not against other lien claimants. The doctrine of *Lamoreaux* arises only when the architect is the sole mechanic's lien holder. When there are other mechanic's liens, all liens will date back to the commencement of the work of improvement. Thus, the lender will not face "invisible liens." In other words, an architect has a lien as against the owner's interest once the architect completes the contract. When the work of improvement commences, the architect's lien dates from

that point, with a priority relating to that date.

It would be manifestly unjust to deny an architect a lien because the person with whom the architect contracted has prevented the work that raises the lien. Architects have little or no control over the construction of their designs; they can do nothing themselves to begin work on the ground to make their liens valid. Consequently, this court adopts the holding of *Lamoreaux*, and rules that as against an owner who prevents commencement of a work of improvement, no actual or visible work on the ground is necessary for an architect to attach a mechanic's lien if the lienable work is completed.

*Id.* at 978–79 (citation omitted).

Likewise, we find the *Lamoreaux* reasoning in line with the policy behind our lien law and the liberal construction necessary to serve its remedial purpose. Because architects rely upon their entitlement to a lien against property upon which they have contributed labor, the lien statutes should not be given a construction so narrow as to defeat their intent and purpose. To do so would undermine the purpose of insuring payment to those who render services toward a project that has been abandoned through no fault of a claimant.

Other jurisdictions have reached a similar result.[3] In *Seracuse Lawler & Partners, Inc. v. Copper Mountain*, 654 P.2d 1328 (Colo.Ct.App.1982), the architect claimed a lien for services performed for construction of a hotel. Excavation of the site began and continued until the site filled with water. Subsequently, the development was abandoned when additional financing could not be obtained. In uphold-

---

**3.** In reaching our holding, we are aware of certain jurisdictions that, because of the wording of their lien statutes, hold an architect's claim of lien invalid if construction or improvement does not occur. *See, e.g., Torkko/Korman/Eng'rs v. Penland Ventures*, 673 P.2d 769, 772 (Alaska 1983) (AS 34.35.050 refers to construction of building or structure, and word "it" used in clause "has a lien on it for the work done or material furnished" refers to visible improvements); *Mark Twain Kan. City Bank v.*

*Kroh Bros. Dev. Co.*, 14 Kan.App.2d 714, 798 P.2d 511, 515 (1990) (K.S.A. 60–1101 requires that labor and materials be "used or consumed" for the improvement of real property); *Stern v. Great Plains Fed. Sav. & Loan Ass'n*, 778 P.2d 933, 936 (Okla.Ct.App.1989) (in order for lien to arise, 42 O.S. 1981 § 141 contemplates that the land is improved through some erection, alteration, or repair of building, improvement or structure on said land).

ing the lien, the Colorado Court of Appeals stated:

> For the purposes of the mechanics' lien law, the claimant is not to be charged with another's mistake in judgment which results in the noncompletion of the project. To hold otherwise would defeat the purpose of the statute. An owner could easily shutdown a project before substantial completion, and, arguing that a partially complete project represents no value enhancement to the property, he could thereby leave those who worked on the project without any lien remedies.

*Id.* at 1331. Along the same line, the Indiana Court of Appeals recognizes an estoppel exception to the general rule that for a lien to arise, materials and labor must be actually used in the construction. In *O'Hara v. Architects Hartung & Ass'n,* 163 Ind.App. 661, 326 N.E.2d 283 (1975), the court upheld a claimant's lien where his architectural services were not used because the property owner abandoned the project. In doing so, the court held that " 'the law is not so unjust as to defeat the right to the lien because the owner may for any reason fail to complete the work.' " *Id.* 326 N.E.2d at 287 (quoting *Scott v. Goldinhorst,* 123 Ind. 268, 24 N.E. 333, 334 (1890)); *see also Van Wells v. Stanray Corp.,* 168 Ind.App. 35, 341 N.E.2d 198, 201 (1976) (applying estoppel exception to uphold lien where materials, although not incorporated into the structure, were furnished to property owner directly). Similarly, in Utah, where the mechanic's lien statutes specifically entitle an architect "a lien upon the property upon or concerning which they have rendered service," Section 38–1–3, U.C.A., 1953, the court in *Zions First National Bank v. Carlson,* 23 Utah 2d 395, 464 P.2d 387 (1970), held that an architect may file a lien against property "although his plans may not be brought to fruition by erection of a building." *Id.* 464 P.2d at 388.

Based upon the above discussion and the intent of our legislature in enacting our mechanic's lien statutes, we affirm the judgment of the district court in its entirety.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.