2003-NMCA-020

62 P.3d 748

CHASE MANHATTAN MORTGAGE
CORPORATION, Plaintiff–
Appellant,

v.

Claude CARAWAY, and his wife, Ruby
Caraway, d/b/a Caraway Drilling,
Defendants–Appellees.

No. 21,854.

Court of Appeals of New Mexico.

Sept. 26, 2002.

Julie J. Vargas, Hunt & Davis, P.C., Albuquerque, NM, for Appellant.

Kim E. Kaufman, Albuquerque, NM, for Appellees.

## OPINION

IRA ROBINSON, Judge.

{1} Chase Manhattan Mortgage Corporation (Chase) appeals the district court's ruling that the mechanic's lien of Claude and Ruby Caraway (the Caraways) has priority over the mortgage held by Chase. Chase argues that the district court erred in granting priority status to the Caraways' lien because (1) the claim of lien was not timely filed, (2) there is no basis for an equitable tolling of the deadline for filing the claim of lien, and (3) there is no basis for granting the Caraways an equitable lien superior to Chase's mortgage. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} This appeal arises from two consolidated actions to foreclose on real property owned by Roger and Maria Walker (the Walkers). On July 15, 1999, the Caraways filed a complaint for foreclosure of their mechanic's and materialman's lien. The complaint alleged that New America Financial, Inc., held a mortgage to the property but that the mortgage was inferior to the Caraways' lien. Chase, the assignee of the Walker mortgage from New America Financial, filed a complaint on August 5, 1999, for foreclosure of the mortgage it held against the

Walkers' property. Chase alleged its mortgage was superior to the Caraways' lien.

{3} On October 26, 1999, the Caraways answered Chase's complaint, denying that their lien was inferior. On October 27, 1999, Chase answered the Caraways' complaint, asserting it was the holder in due course of the mortgage assigned to it by New America Financial and denied its mortgage was inferior to the Caraways' lien. The Walkers did not answer either complaint. The district court subsequently ordered both foreclosure actions consolidated upon the joint motion of Chase and the Caraways.

{4} The district court entered an order granting Chase's motion for default judgment and entered an order granting the Caraways' motion for partial default judgment. Accordingly, the sole issue for resolution at trial was the priority of Chase's mortgage over the Caraways' mechanic's and materialman's lien.

### A. Trial Testimony and Documentary Evidence

{5} Debbie Fowler, a loan officer for a mortgage brokerage company of First City Financial, testified that she was contacted by a manufactured home dealership to see if she could get a loan for the Walkers. As a loan officer, Ms. Fowler testified that she takes care of closing the loan and makes sure that all conditions for funding the loan are met. In this capacity, she acts as the funnel through which everything goes to the lender, and she was the person with whom the Walkers and the Caraways dealt. Her services are paid for out of the proceeds of the loan.

{6} When processing a loan, Ms. Fowler testified that she first receives bids for any work to be done on the project, which immediately go to the lender to determine if there is enough money in the loan to pay for the project. As work for the project is completed, she submits the actual bills to the lender. Ms. Fowler indicated that the lender will include closing instructions to pay all bills that are, or could be, a lien against the property to insure that the lender's mortgage is in a first position. Only after the lender receives all the bills will the lender prepare the necessary paperwork and close on the loan.

{7} With regard to the Walkers' loan, Ms. Fowler testified that she knew the Caraways would be drilling a well for the Walkers, so she asked for a copy of their bid before attempting to secure a loan for the Walkers. Ms. Fowler testified that she submitted the Caraways' bid to the lender, and later approved an additional $4000 for drilling after the Caraways discovered that they would need to drill deeper to find water. When Ms. Fowler received the Caraways' bill for the finished work, the Walkers had yet to receive final approval for their loan.

{8} Ms. Fowler indicated that it was the Walkers, not she, who made the arrangements with the Caraways for the well drilling, but she did acknowledge that the Caraways were to be paid from the proceeds of the Walkers' loan. Ms. Fowler further acknowledged sending a commitment letter to the Walkers in June 1998 indicating that the loan was conditionally approved. At the time of the letter, the anticipated amount of the loan was sufficient to pay for the cost of the well drilled by the Caraways. However, final loan approval was subject to a number of conditions, including receipt of current documentation of the Walkers' income and assets. Ultimately, the final loan amount was reduced by $9000 after the Walkers' financial documents were updated prior to closing. Ms. Fowler testified that although she had approved the additional drilling by the Caraways, she did so based on the conditional loan amount before the lender reduced the final amount by $9000. Ms. Fowler also indicated that although the lender's closing instructions directed the payment of a number of bills before closing the Walkers' loan, the Caraways' drilling bill was not included in that list. However, Ms. Fowler recalled sending all bills to the lender before closing.

{9} Claude Caraway testified that the Walkers approached him about finishing a well that had been started on their property, which was to be used for a mobile home. The Walkers said they needed to complete the well in order to get approval for a loan, but they could not pay for the cost of the well without the loan. Mr. Caraway told the

Walkers he would finish the well if he could be assured that he would be paid. Mr. Caraway testified that he submitted an estimate of the cost of the well to Ms. Fowler and received verification that he would be paid from the proceeds of the loan after an inspection of the property and closing of the loan. Accordingly, the Caraways began work on the well on July 26, 1998, after the Walkers received the letter of commitment for the loan.

{10} Mr. Caraway testified that they drilled to a depth of 400 feet, but the well was dry, so he called Ms. Fowler to inform her of the situation. He indicated that he received approval to continue drilling for water because there was enough money in the loan to do so. At a depth of 700 feet the Caraways reached water, and they subsequently received approval from Ms. Fowler to purchase the equipment needed to pump water out of the well. According to Mr. Caraway, the well was completed on September 2, 1998, and he never needed to return to the well to do any more work.

{11} Although Mr. Caraway was told that he would be paid from the proceeds of the loan upon an inspection of the property and closing of the loan, he was never informed of an inspection or closing after submitting the bill to Ms. Fowler. Ruby Caraway testified that she periodically called First City Financial and spoke to Ms. Fowler or her associate to check on the status of the loan closing. Mrs. Caraway understood from these conversations that Caraway Drilling would be paid when the loan closed but that the loan could not be closed until an inspection was completed. However, Mrs. Caraway never received notice of the inspection.

{12} On December 23, 1998, the Walkers' loan closed, and they executed a promissory note and mortgage to the original lender, New America Financial, as evidence of, and security for, the debt. On December 30, 1998, a check in the amount of $1904.58 was issued to Caraway Drilling. Because the Caraways were not fully paid from the proceeds of the Walkers' loan, Ms. Fowler arranged to pay the Caraways an additional $1000 from the proceeds of a separate loan in January 1999. Aside from these partial payments, there was no evidence that the Caraways received any other compensation for the work done on the Walker property.

{13} On December 31, 1998, the Walker mortgage to New America Financial was filed in the Catron County Clerk's Office. On February 1, 1999, New America Financial assigned the Walker mortgage to Chase. On March 25, 1999, the Caraways filed their notice of mechanic's and materialman's lien in the Catron County Clerk's Office.

## B. The District Court's Decision

{14} Immediately following closing arguments, the district court issued an oral ruling from the bench. In pertinent part, the court stated:

I'll determine that the date of completion was early in September—September 2nd—but the problem here is that your client, through its agent, lulled the contractor into not doing anything until, much to his surprise, late in December, after Christmas, he gets this belated Christmas present of 10% of what he was owed, and that's when he realized that he had a problem. He had the assurance up until then as indicated in Exhibit H, that he was being protected. . . . .

You can take me up on appeal because I think we're going to make some new law here. He didn't know until he got this check representing 10% of what he was owed that he had a problem. And then, within 120 days he took action. He filed the claim of lien. I don't know what more I need to say. It's a rather simple case. He was permitted to rely on the assurances of the loan officer. We heard her testimony. I think all the witnesses were very forthright in their testimony, and that's the basis of my decision. I'll grant the relief requested, and the Caraways have a priority in this matter ahead of the bank. And, you know, this property is sort of worthless without water, and I'm sure the bank, well, I'm satisfied the bank knew that to have good collateral they had to have good property and good property out here means access to water. I'm a little surprised the bank took the position they did. They relied on the statute, and

we'll soon find out through the appellate courts whether there can be an exception to the statute. I think there should be.

{15} The district court thereafter issued its written findings and conclusions. In part, the court found that the Caraways completed work on the well on September 2, 1998, and that on the same day the Caraways submitted an invoice to First City Financial for the work performed. The court found First City Financial acquired financing for the Walkers with New America Financial and that Ms. Fowler was the person to whom all bills were to be submitted for payment at the time of the closing of the loan transaction. The court also found that Ms. Fowler informed New America Financial of the Caraways' invoice and assured the Caraways that payment would be forthcoming after final inspection and at the time of closing. Of most significance, the court found that the Caraways "were lulled into not realizing until after the time of the closing of the loan transaction (of which they had no notification) and until more than 120 days had elapsed from the date of the completion of the well on September 2, 1998 that [New America Financial] had provided insufficient funds to pay the [Caraways'] invoice." The court further found that New America Financial "knew or should have known that the value of the mortgaged property would be substantially diminished without the access to water as provided by [the Caraways'] services." The court therefore found and concluded that the Caraways' "claim of lien is a valid first and prior lien against the property ahead of the subject mortgage lien, since [the Caraways'] claim of lien was filed within 120 days of the date they realized they had not been paid in full at the closing of the loan transaction."

{16} Implicit in the court's judgment making the Caraways' lien superior to Chase's mortgage is a determination that Chase was subject to one or more of the Caraways' equitable defenses—defenses based on the conduct of New America Financial.

## II. DISCUSSION

{17} The underlying rationale for the district court's decision invoked equitable considerations to excuse the Caraways' failure to strictly comply with the statutory deadline for filing a mechanic's lien. Chase challenges the district court's reliance on equitable considerations. Chase argues that the lien statutes must be strictly construed, and, under a strict construction, the Caraways' claim of lien was not timely filed. However, since we affirm on equitable tolling, we need not address strict timeliness of the filing. Chase also argues that there is no basis for an equitable tolling of the deadline for filing the claim of lien. Finally, to the extent that the district court's decision may have recognized an equitable lien in favor of the Caraways, Chase argues that there is no basis for granting the Caraways an equitable lien superior to Chase's mortgage.

{18} Although the Caraways did not substantially comply with the 120–day deadline, Chase recognizes that the district court's decision can be construed as imposing an equitable tolling of the filing deadline for the Caraways' claim of lien. As noted above, the district court found that the time for filing the claim of lien did not begin to run until the Caraways discovered that they were not to be fully paid from the proceeds of the Walkers' loan. The court further found that the Caraways were lulled into not filing a claim of lien because of the assurances from Ms. Fowler that they would be paid upon the closing of the Walkers' loan. Chase argues that even if Ms. Fowler's assurances lulled the Caraways into inaction, that is an insufficient basis upon which to equitably toll the filing deadline of Section 48–2–6.

{19} Chase relies on the case of *City of Roswell v. Chavez*, 108 N.M. 608, 610–11, 775 P.2d 1325, 1327–28 (Ct.App.1989), to argue that the tolling of a limitations period is ordinarily accomplished by statute and a right to a non-statutory tolling must be based on some fault on the part of the party against whom the lien is asserted. In particular, Chase points out that while the district court blamed Ms. Fowler for the Caraways' delay in filing their claim of lien, Ms. Fowler's actions cannot be attributed to Chase. Instead, Chase argues that the evidence only shows that Ms. Fowler was the agent of the Walkers and no one else.

{20} Given that the testimony showed Ms. Fowler was the funnel through which all information passed between the Walkers and New America Financial and that Ms. Fowler had the responsibility to ensure that all conditions for closing the loan were met, and also given her assurances to the Caraways, we have little difficulty holding that the evidence would support a finding that Ms. Fowler had apparent authority to promise or represent to the Caraways that they would be paid by the lender. *See Diversified Dev. & Inv., Inc. v. Heil,* 119 N.M. 290, 296, 889 P.2d 1212, 1218 (1995) (finding a principal responsible for acts of agent when principal clothes agent with appearance of authority by appointing person to "position that carries with it generally recognized duties"). Further, although Chase relies on the lack of a specific written finding of agency by the district court, the court's oral remarks indicate that the court actually found that Ms. Fowler was the agent of New America Financial. *See Ledbetter v. Webb,* 103 N.M. 597, 603, 711 P.2d 874, 880 (1985) (finding that a trial court's verbal comments can be used to clarify findings).

{21} Because the evidence establishes that Ms. Fowler was not only the agent of the Walkers, but also the agent of New America Financial, the Caraways argue that Ms. Fowler's actions are an adequate basis for an equitable tolling of the filing deadline as against Chase. Several cases in New Mexico recognize that equitable estoppel principles may operate to toll the running of the statute of limitations periods. *See Southwest Cmty. Health Servs. v. Safeco Ins. Co.,* 108 N.M. 570, 572, 775 P.2d 1287, 1289 (1989) (stating that although hospital failed to send notice of lien to home office of insurer as required by statute, the Court ruled insurer was estopped from denying actual notice of claim of lien because hospital was entitled to rely on assurances by insurer's agent that such information could be sent to local office); *Molinar v. City of Carlsbad,* 105 N.M. 628, 631, 735 P.2d 1134, 1137 (1987) (stating that "offers or promises of settlement, in connection with other conduct of defendants upon which plaintiffs have reasonably relied, may have the effect of tolling the statute of limitations"); *In re Drummond,* 1997-NMCA-094, ¶ 13, 123 N.M. 727, 945 P.2d 457 (stating that a party may be equitably estopped from asserting statute of limitations defense if party's conduct has caused plaintiff to refrain from filing lawsuit until after limitations period expired). Although we do not have any cases in New Mexico specifically addressing whether a party may be equitably estopped from relying on the filing deadlines in our mechanic's lien statutes, we find it persuasive that California has seen fit to apply traditional principles of estoppel to its mechanic's lien filing deadlines. *See Fontana Paving, Inc. v. Hedley Bros.,* 38 Cal. App.4th 146, 45 Cal.Rptr.2d 295, 300–01 (1995); *Doherty v. Carruthers,* 171 Cal. App.2d 214, 340 P.2d 58, 62 (1959); *see also Cubit Corp.v. Hausler,* 114 N.M. 602, 604, 845 P.2d 125, 127 (1992) ("In interpreting our lien law, New Mexico appellate courts have looked with favor to California case law for guidance."). Several other states also recognize that mechanic's lien requirements are subject to equitable estoppel principles. *See, e.g., Smith v. Bruning Enters., Inc.,* 424 N.E.2d 1035, 1037 (Ind.Ct.App.1981); *Frederick County Nat'l Bank v. Dunn,* 125 Md. 392, 93 A. 984, 985–86 (1915); *Belt Line Brick Co. v. Standard Home Bldg. Co.,* 170 Minn. 509, 213 N.W. 41, 42 (1927).

{22} The foregoing cases demonstrate that the courts of this state, and of other states, often apply equitable estoppel principles to toll statutory filing deadlines when the party seeking to assert a timeliness defense has engaged in conduct that has caused the other party to refrain from filing a cause of action or lien in a timely manner.

{23} In light of the district court's findings, we believe the district court acted well within its discretion in applying equitable principles to toll the running of the filing deadline in Section 48–2–6. *See generally Padilla v. Lawrence,* 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct.App.1984) (finding that a decision to grant equitable relief will not be reversed on appeal absent showing of clear abuse of discretion). Up to the closing of the loan, Ms. Fowler assured the Caraways that their invoice would be paid from the loan proceeds and the Caraways had no reason to suspect otherwise. Although the Caraways

were told they would be paid upon inspection of the property and closing of the loan, they did not receive notice of an inspection or closing date despite repeated attempts to secure such information from Ms. Fowler. Under these circumstances, we see no basis for overturning the court's decision to begin the running of the 120–day filing deadline in Section 48–2–6 from the time that the Caraways realized they would not be paid in full from the proceeds of the Walkers' loan.

{24} Even though the evidence supports the notion that Ms. Fowler's actions can be attributed to New America Financial as the basis for an equitable tolling of the filing deadline in Section 48–2–6, we recognize that there is no evidence establishing that Ms. Fowler was the agent of Chase. Moreover, the evidence developed at trial does not indicate whether Chase was even aware of the Caraways' potential lien at the time of the assignment of the mortgage from the original lender to Chase. Indeed, the court's decision is silent about the effect of the assignment of the mortgage and implicitly assumes that if equity would warrant subordinating New America Financial's mortgage to the Caraways' lien, that subordination would carry forward to the assignment of the mortgage to Chase. We also recognize that as the holder in due course of the mortgage assigned to it from New America Financial, Chase could have argued below that it was not subject to defenses that the Caraways asserted against New America Financial. *See Ballengee v. N.M. Fed. Sav. & Loan Ass'n,* 109 N.M. 423, 425, 786 P.2d 37, 39 (1990) (recognizing that holder of assigned note and mortgage takes subject to all defenses, liens, and equities that could have been asserted against original holder unless assignee is holder in due course).

{25} Despite Chase's position as the successor-in-interest to New America Financial, at no time did Chase argue below that its status as an assignee or holder in due course insulated it from defenses that the Caraways asserted based on the conduct of New America Financial's agent. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) (stating that an appellate court will not consider issues not raised below). Moreover, Chase did not argue in its briefs on appeal that its status as assignee and holder in due course was of any significance. *See In re Doe,* 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (stating that an appellate court will not reach issues the parties failed to raise on appeal). Chase chose instead to assert and argue that Ms. Fowler was not the agent of New America Financial, an argument that we have rejected for the reasons stated above. To the contrary, Chase's arguments assumed that its status was interchangeable with that of New America Financial.

{26} Furthermore, because Chase failed to alert the district court to the potential significance of its status as the successor-in-interest to the mortgage originally held by New America Financial, the district court and the Caraways had no reason to explore whether Chase had any knowledge of Ms. Fowler's actions and the Caraways' potential lien. *See Diversey Corp. v. Chem–Source Corp.,* 1998–NMCA–112, ¶ 38, 125 N.M. 748, 965 P.2d 332 (stating that the purpose of preservation rule is to give the court the opportunity to correct errors and develop a record from which appellate court can make informed decisions). Accordingly, we do not address the impact, if any, of Chase's status as assignee and holder in due course of the Walker mortgage. We express no opinion on the extent to which other entities, like Chase, may or may not be able to avoid equitable defenses that otherwise could be asserted against a predecessor-in-interest like New America Financial.

{27} Nothing in this opinion is intended to apply to the priority of liens as against assignee and holder in due course outside of the specific circumstances in this case.

### III. CONCLUSION

{28} Based on the foregoing, we affirm the district court's judgment. Because we are affirming the district court decision under the equitable tolling theory discussed above, we need not address the equitable lien issue.

{29} **IT IS SO ORDERED.**

I CONCUR: RICHARD C. BOSSON, Chief Judge.

JONATHAN B. SUTIN, Judge (specially concurring).

JONATHAN B. SUTIN, Judge (specially concurring).

{30} I concur. I write separately only to emphasize how important it is for parties to expressly and clearly bring an issue to the attention of the district court and to seek a ruling on the issue. This case is a prime example of just how important it is. Chase requested a finding of fact and a conclusion of law that it was a holder in due course. The court adopted the requested finding and the requested conclusion. The record nowhere reflects why the court ruled against Chase despite the fact it was a holder in due course. And therein lies the basis for Chase's difficult position on appeal. The significant "issue" was not whether Chase was a holder in due course. It was whether that status had the legal effect of preventing the assertion of Caraways' defenses against Chase. Chase failed to raise with the court why holder in due course status precluded Chase from being straddled with New America's susceptibility to equitable defenses. Chase offered no conclusion of law as to, and did not argue, the effect or significance of holder in due course status in regard to Caraways' defenses. Chase did not even raise this in its brief in this Court.